# In the United States Court of Federal Claims

No. 18-52T

(Filed: April 24, 2019)

```
*************************************
PERFECT FORM MANUFACTURING      *
LLC,                            *
                                *
              Plaintiff,        *
                                *
       v.                       *
                                *
THE UNITED STATES,              *
                                *
              Defendant.        *
*************************************
```

I.R.C. § 4161(b); Excise Tax on Archery Products; I.R.C. § 4216(b); Constructive Sale Price; Motion to Compel; RCFC 26(b); Relevance; Overly Broad; Unduly Burdensome

Casey T. Grabenstein, Chicago, IL, for plaintiff.

Miranda Bureau, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

The parties in the above-captioned case dispute the propriety of an assessment by the Internal Revenue Service ("IRS") against plaintiff Perfect Form Manufacturing LLC ("Perfect Form") for excise taxes on Perfect Form's sale of certain archery products pursuant to section 4161(b) of the Internal Revenue Code ("I.R.C.") and the IRS's refusal to refund excise taxes that Perfect Form contends it paid in error on some of its purchases of archery products. The parties are currently engaged in discovery, and a dispute has arisen that caused defendant to move the court to compel Perfect Form to produce various documents. As explained below, defendant's discovery requests are within the scope permitted by the Rules of the United States Court of Federal Claims ("RCFC") and are neither overly broad nor unduly burdensome. Accordingly, the court grants defendant's motion.

### I. BACKGROUND

Chapter 32 of the I.R.C. pertains to excise taxes on manufacturers. Under that chapter, there is an 11% tax on the sale price of archery bows sold by a "manufacturer, producer, or importer." I.R.C. § 4161(b)(1) (2012); see also Compl. ¶ 11 (referring to the "11 percent tax on the sales price of taxable bows and archery equipment" as the "Archery Tax"). When an item subject to the excise tax on manufacturers is "sold (otherwise than through an arm's length transaction) at less than the fair market price," the excise tax is based on a constructive sale price

determined by the IRS—i.e., "the price for which such articles are sold, in the ordinary course of trade, by manufacturers or producers thereof." I.R.C. § 4216(b)(1)(C).

The purpose of imposing the constructive sale price is to prevent tax avoidance. Blue Mountain Energy, Inc. v. United States, No. 2:14-cv-418-DN, 2016 WL 4179366, at *5 (D. Utah Aug. 5, 2016). Of particular relevance here, when a manufacturer sells an archery bow to a related-party distributor that "regularly sells such article to one or more independent retailers, but does not regularly sell to wholesale distributors," the "constructive sale price of such article shall be 90 percent of the lowest price for which such distributor regularly sells such article in arm's-length transactions to such independent retailers." I.R.C. § 4216(b)(3). The presumption is that the constructive sale price constitutes the fair market value price; the burden is on the manufacturer to prove otherwise—i.e., that its sales to a related party were at fair market value and thus should be the sale price upon which the excise tax is computed. Storm Plastics, Inc. v. United States, 770 F.2d 148, 154 (10th Cir. 1985).

Elite Outdoors LLC ("Elite") is a wholesale distributor of archery bows, selling primarily to independent retailers.[1] See Compl. ¶¶ 8, 10. Beginning in 2009 and continuing through mid-2011, Elite "purchased 100% of its archery bows from an unrelated bow manufacturer, Grace Manufacturing Corporation ("Grace")," at a price set by Grace. Id. ¶ 10. In May 2011, Perfect Form was organized as an entity for the express purpose of replacing Grace in Elite's supply chain, and began selling its archery bows to Elite. Id. ¶ 17. Perfect Form acknowledges that it is, and was at all relevant times, a "related entity" with respect to Elite.[2] See id. ¶ 8.

From July 1, 2011, through September 30, 2012, Perfect Form sold archery bows to Elite and paid the archery tax on those sales. Id. ¶ 23. In April 2014, the IRS instituted an audit of Perfect Form's excise tax returns for those time periods. Resp. Ex. F at 1. Eventually, the IRS determined that Perfect Form did not sell its bows to Elite at a fair market value price and assessed additional excise taxes (plus penalties and interest) based on a constructive sale price. Compl. ¶¶ 9, 23; Compl. App. 17-19.

In the meantime, Perfect Form sought a refund of excise taxes it paid with the third quarter of 2011 ("2011-Q3") by filing an amended excise tax return. Compl. ¶ 24. On its 2011-Q3 amended return, Perfect Form stated that it was entitled to a refund of $14,622 of the excise taxes it had paid because it "purchased completed archery items 'tax paid' from [Grace, an] unrelated manufacturer" and therefore federal excise tax "was erroneously paid on the same articles . . . thus double paying the excise tax." Compl. App. 2.

---

[1] Elite also transacts business under the name "Elite Archery." See, e.g., Resp. Ex. C ¶¶ 5-6.

[2] As of March 1, 2012, Perfect Form and Elite are both wholly owned by Outdoor Group LLC ("Outdoor Group"). Resp. Ex. E at 6.

Perfect Form also disputed the assessments of additional excise tax, along with the concomitant penalties and interest, for the fourth quarter of 2011 ("2011-Q4") and the first three quarters of 2012 ("2012-Q1," "2012-Q2," and "2012-Q3"). To that end, Perfect Form paid the tax for a single transaction that took place during each of the quarters at issue, filed a claim for refund of the divisible tax, and requested abatement of the remaining assessments. Compl. ¶¶ 26-30, 34.

On March 24, 2017, the IRS denied Perfect Form's refund claim for 2011-Q3. Id. ¶ 25. That same day, the IRS denied Perfect Form's refund claim and abatement request for 2011-Q4. Id. ¶ 28. The IRS did not respond to Perfect Form's refund claims and abatement requests for 2012-Q1, 2012-Q2, and 2012-Q3. Id. ¶ 31.

Perfect Form filed suit in this court on January 10, 2018. In its complaint, Perfect Form seeks (1) a refund of certain excise taxes paid for 2011-Q3 based on its theory that it purchased archery products "tax-paid" from Grace, (2) a refund of the divisible excise taxes it paid for 2011-Q4 through 2012-Q3, (3) abatement of the remaining assessments based on its theory that it sold archery bows to Elite at fair market value, and (4) costs and attorney's fees. Defendant filed a counterclaim for the value of the unpaid assessments, penalties, and interest, for an estimated total amount of $225,215.96. The parties then filed a joint preliminary status report. Formal discovery began on July 25, 2018, when the court issued a discovery scheduling order.

After amending its discovery requests and conferring with counsel for Perfect Form, defendant moves the court—pursuant to RCFC 37(a)(3)(B)—to compel Perfect Form to produce certain documents pertaining to Perfect Form's (1) formation and operations, including that of its related entity Elite; (2) records of purchases and sales; (3) prices and pricing methodology; and (4) communications relevant to various issues in this case, including communications with Deloitte Tax LLP ("Deloitte"). Perfect Form objects to defendant's discovery requests as irrelevant, overbroad, burdensome, and not proportional to the needs of the case. Defendant's motion has been fully briefed. The parties did not request oral argument, and the court deems it unnecessary. Defendant's motion is now ripe for adjudication.

## II. LEGAL STANDARDS

Title V of the RCFC governs discovery in this court. Specifically, RCFC 26(b)(1) provides that

> parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Information is relevant if "it has any tendency to make a fact more or less probable than it would be without the [information]" and such fact "is of consequence in determining the action." Fed. R. Evid. 401; accord Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (explaining that relevant information includes "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). Moreover, "[q]uestions of the scope and conduct of discovery are . . . committed to the discretion of the trial court." Florsheim Shoe Co. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984). The United States Court of Federal Claims ("Court of Federal Claims") "generally has afforded a liberal treatment to the rules of discovery." Securiforce Int'l Am., LLC v. United States, 127 Fed. Cl. 386, 400 (2016), aff'd, 879 F.3d 1354 (Fed. Cir. 2018); accord Herrmann v. United States, 127 Fed. Cl. 22, 40 (2016) ("A court must be careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." (internal quotation marks omitted)). Written interrogatories "may relate to any matter that may be inquired into under RCFC 26(b)." RCFC 33(a)(2). Responding parties "must provide true, explicit, responsive, complete, and candid answers . . . directly and without evasion in accordance with information that [such] party possesses after due inquiry." Lakeland Partners, L.L.C. v. United States, 88 Fed. Cl. 124, 132 (2009) (internal quotation marks omitted). Similarly, a party may request production of documents or electronically stored information ("ESI") "in the responding party's possession, custody, or control" that are "within the scope of RCFC 26(b)." RCFC 34(a). Requests must be reasonably particular, and responding parties must "respond to such requests to the extent the requests are not objectionable." Dairyland Power Co-op v. United States, 79 Fed. Cl. 722, 728 (2007).

However, the Court of Federal Claims has also "recognized that discovery has ultimate and necessary boundaries." Securiforce, 127 Fed. Cl. at 400 (internal quotation marks omitted). The court "must limit the frequency or extent of discovery" allowable under the RCFC if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." RCFC 26(b)(2)(C). A party may object to discovery requests—including interrogatories, RCFC 33(b)(4), and document production requests, RCFC 34(b)(2)(C)—if that party believes such requests are improper.

### III. ANALYSIS

The crux of the dispute currently before the court is whether defendant's requests are within the scope permitted by RCFC. Specifically, the parties dispute the relevance of each category of documents requested by defendant and whether those requests are overly broad or unduly burdensome. The court will address the relevance of each category in turn before discussing the expansiveness of defendant's requests.

#### A. Formation and Operations

The first category of documents requested by defendant concerns the formation and operations of both Perfect Form and Elite. According to defendant, "the reasons for the formation of [Perfect Form] as a legal entity" and "which entity or entities were manufacturers or

subsequent manufacturers of taxable articles" are relevant to Perfect Form's claims. Mot. 4. Perfect Form avers that its formation documents and corporate minutes "have absolutely no relevance to this simple dispute over the fair market price o[f] archery bows." Resp. 2. Specifically, Perfect Form emphasizes that because "there is no dispute that Perfect Form and Elite are affiliated companies with overlapping ownership for the purposes of applying constructive pricing," id. at 12, information concerning their formation and operations is irrelevant.

The court agrees with defendant that its requests pertaining to Perfect Form's and Elite's formation and operations are relevant to Perfect Form's claims. For purposes of I.R.C. § 4216(b)(1)(C), "a sale is considered to be made under circumstances otherwise than at 'arm's length'" if either (1) the seller and purchaser are related entities or (2) the sale "is made pursuant to special arrangements between a manufacturer and purchaser." Treas. Reg. § 48.4216(b)-2(e) (2011). If determining whether there was "overlapping ownership" between Perfect Form and Elite was the only reason for defendant's requests, then those requests would be unnecessary based on Perfect Form's acknowledgement of its related-entity status vis-à-vis Elite. However, documents pertaining to the entities' formation and operations are relevant to ascertaining what, if any, special arrangements exist between them. Further, constructive sale prices are determined, in part, not only on the relationship of a manufacturer to its distributors (including whether there is only one such distributor), but also on whether those distributors themselves are wholesale or retail distributors. In other words, the nature—not just the fact—of the relationship between Perfect Form and Elite is relevant to establishing the constructive price. See United States v. Maverick Mktg., LLC, 295 F. Supp. 3d 1349, 1354-55 (Ct. Int'l Trade 2018) (explaining that a contractual arrangement and the degree of control between two entities could lead to a conclusion "that the purported sales price of the subject merchandise upon which the [federal excise tax] was calculated was not the result of an arm's-length transaction"). Because that information is likely to be contained within formation and operations documents, including corporate minutes, those documents are relevant to Perfect Form's claims.

### B. Records of Purchases and Sales

Defendant next requests complete records of Perfect Form's purchases and sales from 2011 through 2014, and complete records of Elite's purchases and sales from 2009 through 2014. Perfect Form offers no substantive objections with respect to the relevance of these documents.

The relevance of complete purchase and sales records for 2011-Q3 through 2012-Q3—the tax periods at issue—cannot reasonably be questioned. If Perfect Form sold its archery bows to any other entity besides Elite, for instance, that sales information could be crucial in determining the fair market value of those products. In addition, Perfect Form's purchase information is an important factor in evaluating the extent to which Perfect Form was a manufacturer versus a distributor. Further, Elite's complete purchase and sales information is relevant in determining to what extent Elite is a wholesale distributor versus a retail distributor. Completeness is also necessary for differentiating between Elite's sales to related and independent customers. Each of these concepts is indispensable to the analysis required under I.R.C. § 4612(b)(3).

Defendant's request for complete purchase and sales records extends beyond just the tax periods at issue. The court agrees with defendant that because records of purchases and sales immediately surrounding the tax periods at issue could reasonably reflect price changes and the reasons for those price changes, the complete purchase and sales records from 2009 through 2014 are relevant in determining the appropriate fair market value prices.

### C. Prices and Pricing Methodology

The next area of contention is defendant's request for "documents relating to the prices at which Perfect Form and Elite sold bows, and documents reflecting Perfect Form and Elite's consideration of sales prices for completed archery bows." Mot. 9. Defendant observes that the central issue in this lawsuit is "the proper tax base for archery items subject to federal excise tax" and that it is Perfect Form's burden to "rebut the IRS's constructive price." Id. at 10. Perfect Form argues that information regarding pricing methodology is irrelevant because "[a]ll that matters is the final price and whether it was for fair market price." Resp. 13.

To prevail in this lawsuit, Perfect Form must establish that the archery bows it manufactured were indeed sold at their fair market value. Put another way, Perfect Form must rebut the constructive sale price that the IRS computed during the audit that precipitated this action. Storm Plastics, 770 F.2d at 154. Perfect Form must also establish that it would not be unjustly enriched by receiving a refund or abatement of the archery tax paid or assessed. I.R.C. § 6416(a). To do so, Perfect Form must demonstrate that it either did not include the archery tax in its sale prices, repaid the tax collected to the ultimate purchaser, or secured (and filed with the IRS) the written consent of the ultimate purchaser to the allowance of the refund or credit. Id.; see also Treas. Reg. § 48.6416(a)-3(a)(3) (defining "ultimate purchaser" as "the person who purchased the article for consumption, or for use in the manufacture of other articles and not for resale in the form in which purchased").

Defendant remarks that "documents sought related to pricing and how [Perfect Form] and Elite set their prices [are] relevant to whether Elite, in turn, included federal excise tax in the price of bows sold to its customers."[3] Mot. 12. Defendant is correct. Because "the method a

---

[3] In a February 28, 2019 interrogatory response, Perfect Form acknowledged that it included the archery tax in its sales price:

> 9. Do you contend that you did not include [federal excise tax] in the price of bows that you sold to Elite during the tax periods at issue?
>
> ANSWER: No.

Mot. Ex. 4 at 6. In its motion to compel, defendant avers that Perfect Form "admitted in an interrogatory response that it passed the tax on to a purchaser, Elite." Mot. 12. Perfect Form did not challenge that characterization in its response to defendant's motion. However, on April 11, 2019, Perfect Form changed its response to Interrogatory #9 to "Yes." Reply Ex. 11 at 1.

taxpayer uses to set the prices of its goods directly affects" the I.R.C. § 6416(a) inquiry, Browning Arms Co. v. United States, 56 Fed. Cl. 123, 134 (2003) (citing Tenneco, Inc. v. United States, 17 Cl. Ct. 345, 350 (1989)), documents pertaining to pricing and pricing methodology are relevant to that inquiry.  Further, whether the "ultimate purchaser"—which does not appear to be Elite because Elite is a wholesale distributor—ultimately bore the burden of the archery tax is an important step in the analysis.  In any event, the pricing methodology in a closed sale is a "special arrangement" between the seller and purchaser, and the methodology by which a price is determined is, at a minimum, potentially instructive regarding whether that price constitutes a fair market value.

Accordingly, the court agrees with defendant that documents pertaining to Perfect Form's and Elite's prices and pricing methodologies are relevant to the merits of Perfect Form's claims and the I.R.C. § 6416(a) prerequisites for relief.

### D. Communications

Finally, defendant seeks documents reflecting various communications (1) among Perfect Form, Grace, and Elite from 2009 through 2014 that pertain to archery bow specifications and the sale of archery bows; and (2) between Perfect Form and Deloitte from 2011 through 2018 that pertain to Perfect Form's archery tax liability for the tax periods at issue.  As with defendant's other requests, Perfect Form objects to defendant's request for communications documents:

> Once again, these communications have no relevance to any claim or defense in this case.  The issue in this case is whether Perfect Form sold its archery bows for fair market price.  The price is what it is.  There is nothing in Perfect Form's emails that will impact that analysis.

Resp. 14; accord id. at 15.  With respect to the second category of requested communications, defendant preemptively asserts that Perfect Form cannot use privilege as a shield to prevent disclosure of its communications with Deloitte because, to the extent that a privilege otherwise exists, Perfect Form designated certain Deloitte employees as potential witnesses and, in any event, has not produced a privilege log pursuant to RCFC 26(b)(5)(A).  See, e.g., Siler v. EPA, 908 F.3d 1291, 1297 (Fed. Cir. 2018) ("[A] party who seeks to withhold discovery based on privilege has the burden of showing privilege applies.").  Perfect Form does not challenge defendant's assertion regarding privilege, but merely suggests that such communications "have no relevance."  Resp. 15.  Perfect Form further stresses that "if the government wants a preview of the testimony of any Deloitte witness, the government should seek a simple deposition."  Id. at 15; see also Resp. Ex. G at 2 (reflecting Perfect Form's description of the first category of requested communications as having "limited relevance" and, with respect to the second category of requested communications, indicating that it was "stand[ing] on its relevance objection" while declining to address defendant's arguments regarding privilege).

The requested communications among Perfect Form, Grace, and Elite, as well as the requested communications between Perfect Form and Deloitte, are directly germane to the issues at stake in this lawsuit for the same reasons discussed above regarding pricing and pricing methodology.  See supra Section III.C.  Additionally, comparing the specifications of the archery bows sold, including the development of those specifications, is an important component in establishing the fair market value of those archery bows.

At bottom, Perfect Form's theory of the case is that because it sold archery bows to Elite "comparable" to those that Grace had previously sold to Elite, Compl. ¶ 20, and the prices at which Perfect Form sold archery bows to Elite were based on "the actual prices at which [Grace] sold the bows to Elite in arm's length transactions," id. ¶ 21, its sales to Elite "occurred at fair market prices," id.  Defendant is simply asking Perfect Form to produce documents that bear directly on Perfect Form's core allegations.  Perfect Form's relevance objections to defendant's requests regarding communications therefore lack merit.[4]

### E.  Defendant's Requests Are Neither Overbroad Nor Unduly Burdensome

Having determined that all of defendant's requests for production of documents are relevant to the issues at stake in this lawsuit, the court turns to Perfect Form's chief contention that defendant's requests are not "proportional to the needs of the case" as mandated by RCFC 26(b)(1).

Perfect Form explains that it has already produced an extensive amount of documents in this litigation that it previously provided to the IRS during the audit, including, but not limited to:

- invoices from Grace to Elite and others for archery bows and parts;

- invoices from Perfect Form to Elite for archery bows and parts;

- invoices from Elite to third parties for archery bows and parts;

- comparisons between Perfect Form's and Elite's prices for archery bows;

- summaries of sales by Perfect Form to Elite and others of archery bows and parts;

- summaries of sales by Elite for archery bows and parts;

---

[4] Because Perfect Form failed to raise any objections based on privilege or rebut defendant's arguments that the documents cannot be protected, Perfect Form has waived the right to invoke privilege.

- summaries of sales by Perfect Form to Elite and others;

- unspecified general ledger and journal entries by Perfect Form from its QuickBooks accounting software;

- income statements, trial balances, and transaction summaries of Perfect Form;

- declarations pertaining to the archery bow specifications for archery bows sold by Perfect Form and Grace; and

- information pertaining to the corporate ownership and structure of Perfect Form.

Resp. 4-7. Perfect Form avers that "the declarations, interviews, and documents produced by Perfect Form [during the audit] should have been sufficient to determine whether Perfect Form charged 'fair market price' for its archery bows," but the IRS nevertheless "continued to seek more detailed records and invoices during the course of the audit." Id. at 7.

The court recognizes that Perfect Form has indeed produced "hundreds of pages of documents," id. at 12, during both the audit and this litigation. However, Perfect Form's having previously provided documents to the IRS does not relieve it of the responsibility to provide those documents during the discovery phase of litigation it instituted. See Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 136 (2007). Moreover, the pertinent metric with respect to discovery responses is not their sheer volume, but rather their completeness or lack thereof. Perfect Form implicitly acknowledges that its production is incomplete, explaining that it is unable to produce more detailed records because (1) its prior chief financial officer and controller both resigned the same month that the IRS first contacted Perfect Form regarding the archery tax audit, (2) those individuals were inexperienced and kept "back-of-the-envelope" records rather than detailed books, (3) Perfect Form was a startup company without a sophisticated recordkeeping system, and (4) many records simply do not exist due to the passage of time. Id. at 7-8; Resp. Ex. A ¶¶ 15-18; Resp. Ex. D at 1; Resp. Ex. F at 1. It appears, then, that Perfect Form's purported difficulties in responding to defendant's discovery requests is a situation of its own making.[5] Further, given that said former chief

---

[5] To the extent that Perfect Form's initial lack of a sufficient recordkeeping is understandable, that understanding ended with the beginning of the IRS audit in April 2014. At that point, future litigation became reasonably likely (or at least possible), and parties that file lawsuits can expect to be served with discovery requests. Cf. Consol. Edison Co. of N.Y. v. United States, 90 Fed. Cl. 228, 257 (2009) (discussing each party's affirmative duty to preserve materials "reasonably likely to be requested during discovery" (internal quotation marks omitted)), rev'd on other grounds, 703 F.3d 1367 (Fed. Cir. 2013). Further, Elite—and thus Perfect Form, by way of its common ownership and management—was no stranger to litigation long before that, see, e.g., Elite Outdoors LLC v. Stingray Enters., Inc., No. 6:09-cv-06378-JWF

financial officer had previous experience in the same role at a large, well-known company, Resp. Ex. F at 1, Perfect Form's argument that he was inexperienced rings hollow.

While Perfect Form may believe that its production has been sufficient, defendant is nevertheless entitled to all relevant documents that are proportional to the needs of the case. After all, "parties are entitled to develop their respective cases as they deem appropriate . . . , including to avail themselves of all forms of discovery that are permitted under the rules of the court." Estate of Rubinstein v. United States, 94 Fed. Cl. 51, 53 (2010). For example, Perfect Form's position that certain documents are unnecessary since particular witnesses will be available for depositions is "untenable" because, in addition to the presence of the witness, "the possession of all available, pertinent documents" is a "critical component[] to defendant's ability to conduct an effective deposition." Id. Indeed, possession of pertinent documents will undoubtedly narrow the focus of those depositions.

Perfect Form emphasizes that it has already expended substantial time and resources responding to document and information requests. Resp. 9. In support, Perfect Form relies on a declaration provided by Anthony Steil, the chief executive officer of Outdoor Group (Perfect Form's "corporate parent"). Resp. Ex. A ¶ 1. Mr. Steil indicates that he has "personally spent between 40-50 hours . . . collecting documents" throughout the audit and this litigation and that "[o]ther employees have devoted significant amount[s] of time as well." Id. ¶ 6. He describes such time as a "significant disruption" to Outdoor Group, id., but only in a conclusory fashion. Mr. Steil also notes that Perfect Form "has incurred nearly $100,000 in attorneys' fees responding to the government's requests" during the audit and subsequent litigation. Id. ¶ 7.

In addition to his general contentions regarding the burden imposed by defendant's document production requests, Mr. Steil explains the additional burden to respond to defendant's specific requests. Concerning formation and operations documents, he explains:

> In order to locate those documents, [Perfect Form] would have to search the [ESI] on its servers, email, and individual hard drives and devices for any mention or reference to the formation of the company. I would need to devote multiple employees over several weeks to complete this request. This would also cost tens of thousands of dollars in legal fees in addition to the hundreds of thousands that Perfect Form has already incurred responding to the government's requests.

Id. ¶ 19. His explanations for the additional burden to respond to defendant's requests concerning "the consideration of sales prices by Perfect Form," id. ¶ 20, "communication[s] . . . regarding archery bows," id. ¶ 21, and "communication[s] with Deloitte . . . regarding archery bows," id. ¶ 22, are the same verbatim. Compare id. ¶ 19, with id. ¶¶ 20-22. Indeed, Mr. Steil did not even bother to change "formation of the company" to "consideration of sales prices" or

---

(W.D.N.Y. filed July 27, 2009), particularly with respect to sales of archery bows, see Mot. Ex. 5 (reflecting a February 6, 2012 complaint filed by Elite against Grace).

"communications" in subsequent paragraphs. Mere repetition of the same boilerplate assertions does not enhance their persuasiveness. Moreover, given Mr. Steil's assertion that "Perfect Form is a small company," he appears to exaggerate the difficulty of searching Perfect Form's ESI for the documents that defendant seeks.[6] Further, while the court does not question that Mr. Steil has indeed spent approximately forty to fifty hours on the audit and this litigation, he does not provide estimates for any other employees, or even the number of employees that have been involved. In any event, fifty hours of time is certainly not "significant" over a five-year period. (The IRS audit commenced in April 2014.) Mr. Steil further undermines himself by simultaneously asserting that Perfect Form has expended "nearly $100,000" and "hundreds of thousands" in legal fees.

That defendant also requests documents from Elite, which is not a party to this action, does not add to Perfect Form's burden to search its files and ESI. It is well understood that "a party is not obliged to produce . . . documents that it does not possess or cannot obtain." Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007). In the instant case, however, documents in Elite's possession are within Perfect Form's "possession, custody, or control." RCFC 34(a)(1)(A).

> [T]here are a number of factors which may be distilled from case law which help to determine when documents in the possession of one corporation may be deemed under control of another corporation. These factors focus on the other corporation's actual control or inferred control, including any "complicity" in storing or withholding documents. They include (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and (e) involvement of the non-party corporation in the litigation.
>
> For example, subsidiary corporations which are wholly owned by the parent have no right to order the parent corporation to turn over documents. However, because of the ownership situation, there often exists some intermingling of directors, officers, or employees, or business relations. Consequently, the

---

[6] Electronic discovery is now ubiquitous in federal litigation. See City of Rockford v. Mallinckrodt ARD Inc., 326 F.R.D. 489, 492 n.2 (N.D. Ill. 2018) ("ESI is not something to be scared of. . . . Discovery of ESI is still discovery, governed by the same [rules] as all other civil discovery. . . . [T]he ethical rules now require attorneys to be competent with technologies such as ESI."); Front Row Techs., LLC v. MLB Advanced Media, L.P., Civ. No. 3:12-CV-1639-K, 2012 WL 12044383, at *3 (N.D. Tex. Dec. 17, 2012) (presuming that the parties would utilize electronic discovery and describing it as a "now-common method of discovery").

> subsidiary may be required to respond to a Rule 34 request which
> includes the parent company's documents.
>
> Sister corporations are subject to the same analysis. If
> corporate formalities are observed and none of the other factors are
> present, then documents will not be deemed under control of a
> sister corporation. On the other hand, if the factors are present,
> then the inference of control is found.

Uniden America Corp. v. Ericsson Inc., 181 F.R.D. 301, 306 (M.D.N.C. 1998) (citations omitted). First, Perfect Form and Elite are sister companies; neither is owned by the other, and they share a common parent—Outdoor.[7] Second, all three entities have the same officers and directors. See Resp. Ex. E at 7. For example, before becoming chief executive officer, Mr. Steil was the Director of Finance, and then the Vice President of Finance, for both Perfect Form and Elite at the same time. See Resp. Ex. C ¶ 1. He averred that as the Vice President of Finance, he had "access to the business records" and "personal knowledge of the business operations" of both entities. Id. ¶ 3. Further, the IRS noted during the audit that Outdoor was responsible for maintaining Perfect Form's records. Resp. Ex. E at 2. Third, the two entities share information regularly and do substantial business with one another. Indeed, the transactions at issue in this litigation involve the sales of archery bows from Perfect Form to Elite, and Elite benefitted by earning a 41% profit on its resales of those archery bows. Compl. ¶ 23; Resp. Ex. F at 1. The presence of these factors supports the court's inference of Perfect Form's control vis-à-vis Elite.[8]

As a final matter, defendant has demonstrated the reasonableness of its document production requests by attempting to narrow the scope of those requests via interrogatories. For example, before filing the instant motion, defendant attempted to ascertain how Perfect Form determined its prices:

> 16. Describe the method used to calculate the price of
> bows that you sold during the tax periods at issue.
>
> ANSWER: Perfect Form objects to this Interrogatory
> because it seeks information that is not relevant to any claim or
> defense in the case. Perfect Form also objects on the grounds that

---

[7] That Perfect Form, Elite, and Outdoor are limited liability companies, rather than corporations, does not impact the control analysis. Cf., e.g., Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc., 33 F. Supp. 3d 947, 972 (N.D. Ill. 2014) (explaining that under Delaware law, "[t]he same inquiry governs a veil-piercing claim for a limited liability company" as for a corporation); In re Ridgeway, No. 16-10643, 2018 WL 1116531, at *4 n.17 (Bankr. E.D. La. Feb. 27, 2018) (describing the delineation between a limited liability company and a corporation for purposes of the Bankruptcy Code as a "distinction without a difference").

[8] A similar analysis would apply to Perfect Form and Outdoor.

   this Interrogatory is overly broad, unduly burdensome, and not
proportional to the needs of the case.

   17. Identify all documents, such as spreadsheets,
workpapers, and similar documents, describing or reflecting the
method you used to calculate the price of bows that you sold
during the tax periods at issue.

   ANSWER: Perfect Form objects to this Interrogatory
because it seeks information that is not relevant to any claim or
defense in the case. Perfect Form also objects on the grounds that
this Interrogatory is overly broad, unduly burdensome, and not
proportional to the needs of the case.

Mot. Ex. 4 at 7-8.

  Further, defendant attempted to narrow the focus of its requests regarding purchase and sales records after Perfect Form objected to defendant's request for certain financial records using similar boilerplate language (with no additional support). See Mot. Ex. 2 at 13. Specifically, defendant requested production of Perfect Form's complete QuickBooks database for 2011 through 2014, and Elite's complete QuickBooks database for 2009 through 2014.[9] Perfect Form has not agreed to that request. Defendant thus asks, in its motion to compel, that the court order such production. Perfect Form does not specifically address defendant's request for its and Elite's QuickBooks databases beyond remarking that it has already provided some QuickBooks printouts and making blanket, nonspecific assertions regarding consideration of sales prices. See supra Section III.B. As defendant observes, QuickBooks databases can be quickly and easily transferred in an electronic file, e.g., as a backup copy. Therefore, the act of producing a QuickBooks database involves, at most, de minimis time, effort, and expense.

  However, that is not the end of the inquiry. Even though providing a QuickBooks database is not burdensome, such a request can still be overbroad. In Prusin, the United States District Court for the District of Maryland considered a discovery request for the opposing party's QuickBooks database. 2017 WL 1166326, at *2. The court denied the request as overbroad, explaining that because a QuickBooks database potentially contains fairly extensive information, "the production of entire QuickBooks programs without further limitation is excessive in most cases in light of the amount of irrelevant information contained therein." Id. The court noted that, after the opposing party had specifically objected to the QuickBooks request, the requesting party provided "no additional information regarding the content or scope" of its request, and "offer[ed] no metric by which to limit the universe of [the opposing party's]

---

  [9] "QuickBooks programs maintain and analyze a wealth of sensitive financial information. In particular, these programs generate reports that include detailed accounting records, cost and budget reports, balance sheets, profit-and-loss statements, sales data, and individual customer and vendor information." Prusin v. Canton's Pearls, LLC, Civil No. JKB-16-605, 2017 WL 1166326, at *2 (D. Md. Mar. 28, 2017).

extensive financial data." Id. However, the request in Prusin is distinguishable from defendant's request for Perfect Form's and Elite's QuickBooks databases in two important respects. First, unlike the opposing party in Prusin, Perfect Form chose not to address defendant's QuickBooks request. Second, unlike the requesting party in Prusin, defendant provided parameters by which its request could be limited. Therefore, unlike in Prusin, defendant's request for Perfect Form's and Elite's QuickBooks databases are not overbroad, especially considering Perfect Form's reticence to provide other discovery responses. Moreover, production of the QuickBooks databases will likely drastically reduce the time and expense that Perfect Form needs to spend on other forms of discovery.

In sum, defendant's requests for production of documents and ESI are neither overly broad nor unduly burdensome. Therefore, the court need not consider Perfect Form's alternative request to shift the cost of such production under RCFC 26(b)(2)(B).[10]

### IV.  CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, lack merit, or are unnecessary for resolving the issues currently before the court.

Defendant's discovery requests are relevant and neither overbroad nor unduly burdensome. Defendant is therefore entitled to the documents at issue. Accordingly, the court **GRANTS** defendant's motion to compel.

Perfect Form shall provide the requested documents to defendant **no later than Friday, May 24, 2019**, so as not to further delay proceedings. Further, Perfect Form shall provide the requested QuickBooks databases for both Perfect Form and Elite to defendant in either .qbw (regular), .qbb (backup), or .qbm (portable) format **no later than Monday, April 29, 2019**. All deadlines set forth in the existing scheduling order remain in place.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge

---

[10] "Assigning this burden [of disclosure] to the party with inferior access to information creates an incentive for the more knowledgeable party to hide information: the more informed party will not face repercussions for failing to disclose information, and, indeed, will benefit from such information asymmetries." Endo Pharm. Inc. v. Actavis, Inc., 746 F.3d 1371, 1384 (Fed. Cir. 2014) (Dyk, J., dissenting).