# In the United States Court of Federal Claims

No. 18-52T
Filed: May 20, 2022

| | |
|---|---|
| | ) |
| PERFECT FORM MANUFACTURING LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

*Casey T. Grabenstein*, Saul Ewing Arnstein & Lehr, LLP, Chicago, IL, with whom were *Adam S. Fayne*, Saul Ewing Arnstein & Lehr, LLP, Chicago, IL, *Kathleen Saunders Gregor*, Ropes & Gray, LLP, Boston, MA, and *Jeffrey J. Bushofsky*, Ropes & Gray, LLP, Chicago, IL, of counsel.

*Miranda Bureau*, United States Department of Justice, Tax Division, Washington, D.C., with whom were *David A. Hubbert*, Acting Assistant Attorney General, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Mary M. Abate*, Assistant Chief, Court of Federal Claims Section, of counsel.

## OPINION AND ORDER

**MEYERS, Judge**.

The Internal Revenue Code imposes an 11% manufacturer's excise tax on archery bows sold by manufacturers. This tax applies to the price of the bow the manufacturer charges the wholesale distributor. In cases with arm's length transactions between unrelated parties, it is generally easy to determine the sale price against which the excise tax applies. When the sales are entirely between related entities, however, the determination of the excise tax base can become more difficult because there is no free market to look to for the value of the bows.

Following an audit, the IRS assessed additional taxes against Perfect Form, a manufacturer of archery equipment, for four tax quarters for bows it sold to Elite Archery, its related wholesale distributor. Perfect Form contends that these assessments are incorrect and asks the Court to abate these assessments and refund the amounts Perfect Form already paid regarding the assessments for these quarters and the entire amount it paid one additional quarter that Perfect Form claims is an overpayment. The Government contends that Perfect Form is not entitled to an abatement or refund because it has not met several statutory requirements to obtain such a refund or abatement. Because the Court agrees that Perfect Form has not established its entitlement to a refund nor that its tax calculation is correct, the Court grants the Government's cross-motion for summary judgment and denies Perfect Form's motion for summary judgment.

I.      **Background**

A.      **Grace, Elite, and Perfect Form Manufacturing.**

Elite Outdoors, LLC ("Elite") is a wholesale distributor of archery bows and parts.  ECF No. 54-1 at A0002, A0005; ECF No. 57-2 at B071 (Operating Agreement).[1]  Elite was owned by Gregory Steil, Peter Crawford, Dylan Bates, Christopher Orr, and Matthew Kruger.  ECF No. 57-2 at B096.  After a few years, Elite's owners established Perfect Form Manufacturing to manufacture archery equipment.  ECF No. 54-1 at A0002, A0005; ECF No. 57-2 at B215 (Operating Agreement).  Perfect Form was owned by all of Elite's owners plus Keith Hearns and David Reitano.  ECF No. 57-2 at B242.  Then, in 2012, The Outdoor Group, LLC was formed and became 100% owner of both Elite and Perfect Form.  *Id.* at 404; ECF No. 54-1 at A0002, A0005.  Outdoor Group Holdings, Inc., is owned by these same individuals (Steil, Crawford, Bates, Orr, Kruger, Hearns, and Reitano), and owns 59.52% of The Outdoor Group, LLC.  ECF No. 57-2 at B171.  The remaining 40.48% is owned by Steil, Crawford, Bates, Orr, Kruger, Hearns, Reitano, and Michael Kanzler.  *Id.* at B171.  Based on this overlapping ownership and control, the IRS found Perfect Form and Elite to be related entities for all tax quarters at issue.  Perfect Form does not contest this conclusion.

Grace Engineering Corporation ("Grace") also manufactures archery products and components.  *Id.* at B364, 11:21-22.  From 2009 to mid-2011, before Perfect Form was established, Grace sold bows to Elite.  ECF No. 54-1 at A0041-312.  Elite, as a wholesale distributor, sold these bows to its customers, including retailers.  *Id.* at A0005, A0014, 29:17-24.  At some point between the third quarter of 2011 and April 2012, Elite stopped buying bows from Grace.  *Id.* at A0351-449 (summary of Grace sales to Elite ending 9/6/2011); ECF No. 57-2 at B117 ("In April 2012, Grace and Elite terminated their business relationship and Grace ceased manufacturing and assembling bows for Elite.").  Also, at some point during the third quarter of 2011, Perfect Form began buying archery items[2] from Grace.  ECF No. 54-1 at A0026, 81:4-10; A0322, 32:24-33:4; ECF No. 63-1 at A0758-94.  Perfect Form would then take these products and sell them to Elite which would sell the products to its customers.  ECF No. 54-1 at A0026, 81:14-82:15; A0322, 32:24-33:4; ECF No. 63-1 at A0758-94.  Perfect Form eventually transitioned from purchasing archery items from Grace to manufacturing its own bows.  ECF No. 54-1 at A0006.  Perfect Form sold almost all the bows it manufactured to Elite.  ECF No. 57-2 at B050 ("For the 12/31/2011 excise tax period, according to the Profit and Loss statement provide[d] by the Taxpayer all bows sold by the Taxpayer for the period was [sic] sold to their related party distributor. Elite."); *id.* at B065 ("Also, according to the Profit and Loss statement provided by the taxpayer for the 3/31/2012 tax period, all bows sold during that period were to Related Party Distributor."); *id.* at B065-66 ("Moreover, according to the Profit and Loss

---

[1] The Government filed a corrected brief in support of its cross-motion for summary judgment and response to Perfect Form's motion for summary judgment.  *See* ECF No. 62.  But the exhibits to the Government's motion remain at ECF No. 57-2.

[2] Whether these products were completed bows or components used to further manufacture bows is discussed below.  In this context, "archery items" merely identifies the products that were sold by Grace to Perfect Form.

statement provided by the taxpayer for the 6/30/2012 and 9/30/2012 tax periods, 99% of the bows sold were to Related Party Distributor.").

### B.    The disputed tax returns.

Perfect Form timely filed its quarterly tax returns for the tax periods ending September 30, 2011 ("Q3-2011"), *id.* at A0570-71, December 31, 2011 ("Q4-2011"), *id.* at A0572-73, March 30, 2012 ("Q1-2012"), *id.* at A0574-75, June 30, 2012 ("Q2-2012"), *id.* at A0576-84, and September 30, 2012 ("Q3-2012"), *id.* at A0618.  In 2014, the IRS announced it would audit four of these quarters: Q4-2011, Q1-2012, Q2-2012, and Q3-2012.  *Id.* at A0595.

### 1.    Q3-2011.

Perfect Form sought a refund of $14,622.05 for all excise taxes paid for Q3-2011.  *Id.* at A0678-81; *see also id.* at A0570-71 (Perfect Form's Q3-2011 tax return paying $14,622.05 in excise taxes).  In seeking the refund from the IRS, Perfect Form's CEO Anthony Steil stated "[u]pon review of excise tax liabilities, Perfect Form Manufacturing LLC purchased *completed* archery items 'tax paid' from a [sic] unrelated manufacturer.  FET [federal excise tax] was erroneously paid on the same articles for tax period ending 9/30/2011 thus double paying the excise tax.  Claim is to recoup tax erroneously remitted.  Request refund in full."  *Id.* at A0679 (emphasis added).  In other words, Perfect Form was seeking a refund for the excise taxes paid on the archery items purchased from Grace and later sold to Elite, during Q3-2011.  *Id.* at A0322, 32:24-33:18.

On July 27, 2015, the IRS responded to Perfect Form's amended excise tax return for Q3-2011 by requesting documentation supporting the refund claim.  ECF No. 57-2 at B210.  Specifically, the IRS requested a list of the taxable articles, the date(s) of sale, customer(s), serial numbers, price, and federal excise tax (FET).  *Id.* at B210.  Perfect Form's representative, Nick Tranto (consultant to Perfect Form for the Q4-2011 to Q3-2012 audits, *see* ECF No. 63 at 23) responded to this request stating that during Q3-2011 Perfect Form purchased "*bows, bow parts and accessories . . . from* Grace, Elite and 41 other unrelated manufacturers. . . . [Perfect Form's] purchases *from* Elite are detailed in a spreadsheet attached.  Elite bought bows, bow parts and accessories tax paid from Grace in previous months."[3]  ECF No. 57-2 at B211-12 (emphases added).

The IRS denied Perfect Form's refund claim for Q3-2011 concluding "[t]he taxpayer has not provided sufficient information or documentation to prove that the excise tax on archery items was paid twice for the 201109 tax period."  ECF No. 54-1 at A0683.  The IRS based this decision, in part, on representations from Grace.  The IRS explained "Grace Engineering stated that they did not assess or collect FET from the Taxpayer, PFM.  In addition, Grace stated that

---

[3] To clarify, this email states that Perfect Form purchased bows, bow parts, and accessories, *from* Elite.  Defendant pointed out that Perfect Form initially claimed Elite purchased items from Perfect Form.  ECF No. 62 at 29-30.  In its brief, Perfect Form explained that this inconsistency was due to "a mere typographical error.  At no point has Perfect Form argued that it purchased products from Elite."  ECF No. 63 at 23.  Of course, Perfect Form *did* argue it purchased products from Elite, as well as "41 other unrelated manufacturers."  ECF No. 57-2 at B211.

they did not remit any FET to the IRS based on the sales to the Taxpayer during the 201109 tax period." *Id.* at A0682.  The IRS later disallowed Perfect Form's claim for refund on the Q3-2011 tax period and Perfect Form sues to recover $14,622.05 it claims it overpaid for Q3-2011.  ECF No. 1 Prayer ¶ A.

> 2.   Q4-2011.

Following its audit, the IRS concluded that Perfect Form owed an additional $51,268 in excise taxes for Q4-2011, and $4,612.03 of interest.  ECF No. 57-2 at B049-52; ECF No. 54-1 at A0603; *see also* ECF No. 57-2 at B047-48 (IRS workpaper indicating the method used to calculate the additional assessment).  The IRS Certificate regarding Q4-2011 indicates that the IRS assessed this amount on May 19, 2014.  ECF No. 54-1 at A0603.  The IRS assessed the additional taxes because, according to the IRS, Perfect Form "and Elite are related parties and as such, the constructive pricing rules apply."  ECF No. 57-2 at B052.

On March 25, 2015, Perfect Form filed a Form 843, Claim for Refund and Request for Abatement for Q4-2011 seeking a refund of the amount paid, $162.86, and abatement of the assessed balance, $55,880.03.  ECF No. 54-1 at A0630-31.  On April 10, 2015, the IRS also assessed a "failure to pay" penalty under 26 U.S.C. § 6651(a)(2) in the amount of $2,305.43.  *Id.* at A0603.  Then, on May 25, 2015, Perfect Form filed a Form 8849, Claim for Refund of Excise Taxes, seeking a refund of the $162.86 it paid in March, and an abatement of the assessed balance of $55,880.03.  *Id.* at A0627-29.

The IRS disallowed the refund and abatement request for Q4-2011 because "the examination of this tax period ha[d] closed and it [did] not appear that [Perfect Form] supplied any information that would change the [IRS's] previous determination."  ECF No. 57-2 at B182.  The IRS sent two letters disallowing Perfect Form's Q4-2011 claim.  One letter was sent to Peter Crawford, the former President of Elite, *see* ECF No. 57-2 at B113, and dated November 24, 2015.  *Id.* at B182.  But this letter appears to have been sent via certified mail on December 4, 2015, from the IRS Detroit Computing Center in Detroit, Michigan.  *Id.* at B266.  The IRS sent a second letter denying the Q4-2011 claim, also dated December 4, 2015, to Frank Falvo, who was Perfect Form's accountant.  *Id.* at B200; *see also id.* at B202 (indicating the return address of the letter as the IRS Cincinnati IRS Campus).  Perfect Form filed a protest regarding this disallowance on December 28, 2015.  *Id.* at B188, B189-97.

The IRS denied Perfect Form's Q4-2011 protest by letter dated March 24, 2017, stating that Perfect Form could only file suit "within two-years from the date on the letter denying [Perfect Form's] Claim, which the Cincinnati IRS Campus mailed to [Perfect Form] on October 22, 2015."  ECF No. 1-2 at 14.  However, the date denying Perfect Form's protest regarding the Q4-2011 assessment appears to be incorrect.  *See* ECF No. 63 at 24-25.  The record shows that the IRS mailed the denial on December 4, 2015, not October 22, 2015.

> 3.   The 2012 assessments.

The IRS also audited Perfect Form's tax returns for Q1-2012, Q2-2012, and Q3-2012.  ECF No. 54-1 at A0595.  During the audit, the IRS determined that sales by Perfect Form to Elite during Q1-2012, Q2-2012, and Q3-2012, were not arms-length transactions because the

two are "related parties and as such, the constructive pricing rules apply."  ECF No. 57-2 at
B065-69 (Form 886-A Explanation of Items); *see also id.* at B150-56 (IRS's workpaper for the
2012 tax quarters).  Applying the constructive pricing rules, the IRS assessed additional excise
taxes of $48,405.12 for Q1-2012, $48,143.56 for Q2-2012, and $35,404.85 for Q3-2012, on the
sales made by Perfect Form to Elite (collectively "the 2012 assessments").  ECF No. 57-2 at
B065-69; ECF No. 54-1 at A0608, A0613, A0618.  The IRS also assessed penalties of $4,840.51
for Q1-2012, $4,814.36 for Q2-2012, and $3,540.49 for Q3-2012.  ECF No. 54-1 at A0608,
A0613, A0618.  And the IRS assessed interest for these tax periods: $8,359 for Q1-2012,
$7,890.57 for Q2-2012, and $5,493.17 for Q3-2012.  *Id.* at A0609, A0614, A0618.  Perfect Form
unsuccessfully appealed the 2012 assessments, which the IRS affirmed by letter dated March 24,
2017.  *Id.* at A0653.  Perfect Form then submitted a Form 8849, Claim for Refund of Excise
Taxes on April 12, 2017, seeking a refund for the portion of excise taxes they paid in satisfaction
of the statutory requirement to file in this Court.  *Id.* at A0636-37.

### C.   Procedural History

Perfect Form filed this action to recover the portions of the assessments paid, and for
abatement of the remainder of the assessments unpaid, for five separate tax quarters: Q3-2011,
Q4-2011, Q1-2012, Q2-2012, and Q3-2012.  The Government counterclaimed seeking recovery
of unpaid excise taxes for four of these quarters: Q4-2011, Q1-2012, Q2-2012, and Q3-2012.
ECF No. 9 ¶ 39.  The Government's counterclaims also seek penalties and interest assessed
under 26 U.S.C. §§ 6651(a)(2), 6656 for Q1-2012, Q2-2012, and Q3-2012.  ECF No. 9 ¶ 39.
The Government voluntarily dismissed the § 6656 penalties because the excise tax at issue is not
subject to these penalties.  *See* ECF Nos. 47, 49.  The total amount each party now seeks to
recover is as follows:[4]

| Tax Period | Plaintiff's Claim for Refund | Defendant's Counterclaims – additional excise tax assessed | Defendant's Counterclaims – § 6651(a)(2) penalties |
|---|---|---|---|
| Q3-2011 | $14,622.05 | $0 | $0 |
| Q4-2011 | $162.86 | $51,268.00 | $2,305.43 |
| Q1-2012 | $166.00 | $48,405.12 | $0 |
| Q2-2012 | $166.00 | $48,143.56 | $0 |
| Q3-2012 | $165.00 | $35,404.85 | $0 |

## II.   Jurisdiction

---

[4] This table does not include interest.

Although neither Party disputes this Court's jurisdiction for any period other than Q4-2011, the Court still has an obligation to ensure that it has jurisdiction over all Perfect Form's claims before proceeding.  Perfect Form alleges that this Court has jurisdiction over its claims pursuant to 28 U.S.C. §§ 1340, 1346(a)(1), 1491(a).  ECF No. 1 ¶ 6.  Section 1340 does not vest this Court with jurisdiction because it provides that: "The *district courts* shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters withing the jurisdiction of the Court of International Trade." (emphasis added).  This Court is many things, but it is not a district court.  And when Congress vests subject matter jurisdiction in the district courts, this Court does not have jurisdiction.  *Fry v. United States*, 72 Fed. Cl. 500, 505 (2006) ("The United States Court of Federal Claims is not a 'district court,' within the meaning of either 28 U.S.C. §§ 1331 [or] 1340 . . . ."); *see also Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (stating that the Court of Federal Claims is not a district court and does not have general federal question jurisdiction).

This Court has jurisdiction "over any civil action arising under any act of Congress providing for Internal Revenue and for the recovery of any Internal Revenue tax alleged to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the Internal Revenue laws." 28 U.S.C. § 1346(a)(1).  This statute "waives the United States' sovereign immunity from refund suits."  *Chi. Milwaukee Corp. v. United States*, 40 F.3d 373, 374 (Fed. Cir. 1994) (citations omitted).  As such, before this Court may exercise jurisdiction over a tax refund claim, a taxpayer "must first satisfy the tax refund schematic detailed in the Internal Revenue Code . . . which establishes that a claim for refund must be filed with the IRS before filing suit in the court, as well as strict deadlines for filing such claims."  *Meissner v. United States*, 136 Fed. Cl. 763, 772 (2018).

There are several jurisdictional requirements that Perfect Form must satisfy to bring a tax refund action.  26 U.S.C. § 7422(a) "imposes, as a jurisdictional prerequisite to a refund suit, filing a refund claim with the IRS that complies with IRS regulations."  *Chi. Milwaukee Corp.*, 40 F.3d at 374.  And 26 U.S.C. § 6511(a) provides that such a claim must be filed with the IRS the later of "3 years from the time the [tax] return was filed or 2 years from the time the tax was paid  . . . ."  Assuming a timely claim is filed with the IRS, 26 U.S.C. § 6532(a)(1) requires taxpayers seeking relief in Court to file their action within two years from the date the IRS mailed the notice disallowing the taxpayer's claim.  *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1460 (Fed. Cir. 1998) ("[A] taxpayer has two years from the date the notice of disallowance of the refund claim is mailed to file suit.").

In addition, 28 U.S.C. § 1346(a)(1) generally requires taxpayers to pay the full tax before bringing a refund action in court.  *Flora v. United States*, 357 U.S. 63, 72-73 (1958); *see also Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993) ("The full payment requirement of Section 1346(a)(1) and *Flora* applies equally to tax refund suits brought in the Court of Federal Claims.").  But the full payment rule has an exception for divisible taxes.  *Vir v. United States*, 125 Fed. Cl. 293, 300 (2016) (stating that divisible taxes are an exception to the full payment rule); *Diversified Grp., Inc. v. United States*, 123 Fed. Cl. 442, 451 (2015) ("[I]f a tax or penalty is considered divisible, partial payment is sufficient to confer jurisdiction on the court over the refund claim.") (citing *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) and *Cencast Serv., L.P. v. United States*, 729 F.3d 1352 (Fed. Cir. 2013)).  A divisible tax is "one that

represents the aggregate of taxes due on multiple transactions (*e.g.*, sales of items subject to excise taxes)." *Rocovich*, 933 F.2d at 995; *Gaynor v. United States*, 150 Fed. Cl. 519, 532-33 (2020) (citing cases). Because excise taxes are divisible taxes, they fit within the exception to the full payment rule. *Rodewald v. United States*, 231 Ct. Cl. 962, 964 (1982); *see also Diversified Grp., Inc.*, 123 Fed. Cl. at 451 ("[O]ne type of divisible tax is an excise tax because it is assessed on a per item basis."); *see also Flora*, 362 U.S. at 175 n.38 (1960) ("[E]xcise tax assessments may be divisible into a tax on each transaction or event, so that the full-payment rule would probably require no more than payment of a small amount."). To satisfy the full payment rule for a refund claim involving a divisible excise tax, Perfect Form need only pay the tax assessed for one transaction to maintain a suit to recover a refund of excise taxes.

Perfect Form has paid the excise tax on at least one transaction for Q4-2011, Q1-2012, Q2-2012, and Q3-2012, and seeks a refund of these amounts, as well as an abatement of the unpaid IRS assessment. ECF No. 54-1, at A599-621. For Q3-2011, Perfect Form seeks the entire amount it paid to the IRS when it initially filed its taxes in 2011. This Court has jurisdiction over all Perfect Form's claims, except those for Q4-2011, which are addressed below.

### A.      Perfect Form's untimely Q4-2011 filing deprives the Court of jurisdiction over Perfect Form's claim as to Q4-2011.

The Government moves to dismiss the Complaint insofar as it seeks a refund for Q4-2011 for lack of subject matter jurisdiction because Perfect Form filed this action more than two years after the IRS denied its claim. ECF No. 62 at 16-18. 26 U.S.C. § 6532(a)(1) states that taxpayers suing under § 7422(a) must do so within two years of the date the IRS mails the notice disallowing the taxpayer's claim for refund. And the Federal Circuit has clearly and repeatedly held that filing a complaint outside § 6532(a)(1)'s time limit deprives this Court of subject matter jurisdiction. *RHI Holdings*, 142 F.3d at 1461; *Schallmo v. United States*, 825 F. App'x 826, 829 (Fed. Cir. 2020) (affirming dismissal of complaint challenging tax assessments because the complaint was filed outside the two-year limit prescribed in § 6532(a)(1)).

Perfect Form does not contest that it filed its Complaint more than two years after the IRS denied its Q4-2011 claim. *See* ECF No. 63 at 23-25. Indeed, Perfect Form contends that the Government's purported failure to plead an affirmative defense waived its statute of limitations defense. *Id.* at 24; *see also* ECF No. 70 at 23:11-15 ("[Perfect Form's] position is . . . the Government simply waived the statute of limitations defense, which is classically an affirmative defense, by not raising it in their answer"). Here, Perfect Form argues that the Government first raised Perfect Form's untimely filing on summary judgment. ECF No. 63 at 24. But, as the Government contends, because the time limits imposed by § 6532(a)(1) are jurisdictional, they cannot be waived. ECF No. 67 at 6 (citing *RHI Holdings*, 142 F.3d at 1462-63); *see also St. Bernard Parish Gov't v. United States*, 916 F.3d 987 (Fed. Cir. 2019) ("It is well settled that limitations on subject-matter jurisdiction are not waivable . . . ."). Thus, according to the Government, § 6532(a)(1) compels dismissal of Perfect Form's Q4-2011 refund and abatement claims for lack of subject matter jurisdiction. ECF No. 62 at 2; ECF No. 67 at 6.

During oral argument Perfect Form argued for the first time that § 6532(a)(1) is not jurisdictional. According to Perfect Form, the Government raised the statute of limitations in its

cross-motion, Perfect Form responded that the Government waived the statute of limitations by failing to plead it as an affirmative defense, and the Government argued for the first time in its reply that the statute is jurisdictional.  ECF No. 70 at 24:22-25:3.  Because Perfect Form asserts the Government didn't raise the jurisdictional nature of its argument until its reply, Perfect Form asked the Court during oral argument to consider cases it believes show the statute of limitations is not jurisdictional.  There are at least two problems with Perfect Form's argument.

First, Perfect Form is simply wrong that the Government did not raise the jurisdictional nature of the statute of limitations in its cross-motion.  In fact, the Government devotes three pages of its opening brief to the jurisdictional nature of § 6532(a)'s limitations period.  ECF No. 62 at 16-18.  And the Government could not have been clearer: "The statute of limitations provided by § 6532(a) is jurisdictional in nature and is not subject to equitable exceptions."  *Id*. at 17 (citing *RHI Holdings*, 142 F.3d at 1462-63).  If there was any remaining doubt, the Government also argued that because Perfect Form did not file within § 6532(a)'s two-year deadline, "this Court *lacks subject matter jurisdiction* over the plaintiff's claim for [Q4-2011]."  *Id*. (emphasis added).  Perfect Form does not explain why it did not address the jurisdictional argument in its response to the Government's cross-motion when it was so clearly at issue.  Perfect Form cannot, however, raise new arguments for the first time in oral argument.  *Warren v. Off. of Pers. Mgmt.*, 407 F.3d 1309, 1317 (Fed. Cir. 2005) (refusing to consider arguments raised first at oral argument and not addressed in briefs); *L-3 Global Commc'ns Sols., Inc. v. United States*, 82 Fed. Cl. 604, 611 (2008) ("Plaintiff must not be allowed to advance new legal theories at oral argument, prejudicing defendant.").

Second, Perfect Form asks this Court to do something it unquestionably may not do—decline to follow clear Federal Circuit precedent that 26 U.S.C. § 6532(a) is jurisdictional because subsequent Supreme Court precedent *arguably* undermines the Federal Circuit's analysis.  Perfect Form argues that § 6532 fails the Supreme Court's analysis of what constitutes a jurisdictional statute of limitations in *United States v. Wong*, 575 U.S. 402 (2015).  *See* ECF No. 70 at 25:3-29:3.  Whatever the merits of this argument, the Federal Circuit has instructed this Court precisely how to handle the situation—follow its precedent until it, the Supreme Court, or Congress *expressly* overrules it.  *E.g.*, *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005).  Because *RHI Holdings* has not been expressly overruled, the Court continues to follow it.

Finally, Perfect Form argues that the Government relies on "defective" materials in regarding the statute of limitations.  ECF No. 63 at 24.  Specifically, Perfect Form asserts that the Government did not "clearly communicate the applicable dates and time periods when notifying Perfect Form that its appeal had been denied."  *Id.* at 25.  This argument lacks merit.  In its cross-motion, the Government argues that the IRS sent the notice of its denial of reconsideration on or about March 24, 2017, which stated that the initial denial had been mailed October 22, 2015, and that the requested reconsideration did not extend the two-year deadline to file.  ECF No. 62 at 13 (quoting ECF No. 54-1 at A0635).  In fact, the IRS did not send Perfect Form the notice of disallowance (dated November 24, 2015) regarding Perfect Form's claim for refund and abatement for Q4-2011 until December 4, 2015.  ECF No. 57-2 at B182.  Because the Court is basing its analysis on the latest mailing date in the record—the date of the mailing of the IRS's denial of Perfect Form's claim—Perfect Form's argument about confusion regarding earlier dates is irrelevant.  And Perfect Form clearly received the denial; it protested it to the IRS on

December 28, 2015, and included a copy of the IRS letter in the protest. ECF No. 57-2 at B188-209 (Perfect Form protest to the IRS including a copy of the December 4, 2015 letter).

Because the deadline to file suit for the Q4-2011 refund and abatement was December 4, 2017, and Perfect Form filed this action on January 10, 2018, this Court lacks subject matter jurisdiction to adjudicate Perfect Form's claim for a refund of its Q4-2011 excise taxes.

### B.    This Court retains jurisdiction over the Government's counterclaim regarding Q4-2011

Given the dismissal of Perfect Form's Q4-2011 refund claim, the Court must consider whether it retains jurisdiction over the Government's counterclaims for Q4-2011. Although the Government only addresses this issue in a footnote in its cross-motion, ECF No. 62 at 32 n.16, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see also Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case.").

In addition to possessing jurisdiction to adjudicate tax refund claims against the United States, *see* 28 U.S.C. § 1346(a)(1), this Court's jurisdiction also extends "to render judgment upon any set-off or demand by the United States against any plaintiff in such court." 28 U.S.C. § 1503. If this Court determines that "plaintiff is indebted to the United States [this Court] shall render judgment to that effect . . . ." 28 U.S.C. § 2508. Thus, when a plaintiff seeks to vindicate his rights against the United States "he is subjected to the jurisdiction of the court in the decision and determination of whatever claims the United States may have against him which can be properly pleaded by way of set-off, counterclaim, or claim for damages." *Atl. Contracting Co. v. United States*, 35 Ct. Cl. 30, 33-34 (1899).

Here, Perfect Form sued to recover refunds for five separate tax quarters. ECF No. 1 ¶¶ 1, 23-24. The Government filed counterclaims for four of these tax quarters (Q4-2011, Q1-2012, Q2-2012, and Q3-2012). ECF No. 9 ¶ 39. Given the fact that this Court possesses jurisdiction over Perfect Form's remaining claims (*i.e.*, Q3-2011, Q1-2012, Q2-2012, and Q3-2012), this Court also finds that it possesses jurisdiction to adjudicate all the Government's counterclaims, including its claim to collect the Q4-2011 tax as assessed.

### III.    Discussion

#### A.    Standard of Review

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A "genuine" dispute of material fact exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Id.* at 248. "Material" facts are those "that might affect the outcome of the suit under the governing law," as opposed to "disputes that are irrelevant or unnecessary." *Id.* "When both

parties move for summary judgment," moreover, "the [C]ourt must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *AT&T Advertising, L.P. v. United States*, 147 Fed. Cl. 478, 482 (2020) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

In an action to recover a tax refund, "the ruling of the Commissioner of Internal Revenue is presumed correct." *WMI Holdings Corp. v. United States*, 891 F.3d 1016, 1021 (Fed. Cir. 2018) (quoting *Bubble Room, Inc. v. United States*, 159 F.3d 553, 561 (Fed. Cir. 1998)). In rebutting this presumption, the taxpayer must do more than merely "'demonstrate that the assessment of the tax for which refund is sought was erroneous in some respects.'" *Id.* (quoting *United States v. Janis*, 428 U.S. 433, 440 (1976)). "Instead, the taxpayer must also prove the *amount* of the refund due." *Id.* at 1021-22 (emphasis in original) (quoting *Janis*, 428 U.S. at 440). Thus, the burden is on Perfect Form to first rebut the presumption that the IRS's determination is correct, and then prove the amount of refund owed to it. *Danville Plywood Corp. v. United States*, 899 F.2d 3, 7-8 (Fed. Cir. 1990); *Abrahamson v. United States*, 228 F.3d 1360, 1364 (Fed. Cir. 2000) ("In a tax refund case, the taxpayer bears the burden of establishing the right to a refund."); *Bolding v. United States*, 565 F.3d 663, 672 (Ct. Cl. 1977) ("The burden of proof on the Government's counterclaims for the unpaid balance of the assessments was upon plaintiffs, requiring them to show that the Commissioner's determinations were erroneous."); *W. Mgmt., Inc. v. United States*, 45 Fed. Cl. 543, 549 (2000) ("It is well-established that a tax assessment is presumptively correct and that the taxpayer bears the burden of persuasion that the Commissioner's assessment is erroneous.").

### B. Perfect Form's refund claims.

#### 1. Whether Perfect Form bore the economic burden of the excise tax.

Congress imposes an 11% excise tax "on the sale by the manufacturer, producer, or importer of any bow which has a peak draw weight of 30 pounds or more . . . ." 26 U.S.C. § 4161(b)(1)(A). The 11% excise tax also applies to the sale "of any part or accessory for inclusion in or attachment to a bow described in subparagraph (A)." *Id.* § 4161(b)(1)(B)(i). Treasury regulations define a "manufacturer" as "any person who produces a taxable article from scrap, salvage, or junk material, or from new or raw material, by processing, manipulating, or changing the form of an article or by combining or assembling two or more articles." Treas. Reg. § 48.0-2(a)(4)(i).

Congress has imposed certain requirements to obtain a refund of a manufacturer's excise tax because it recognized that manufacturers often pass the cost of the excise tax along to their customers. Here, 26 U.S.C. § 6416(a)(1)(A) requires taxpayers to establish, before receiving any refund or credit, that they have borne the actual cost of the excise tax rather than passing the cost along to their customers:

> No credit or refund of any overpayment of tax imposed by chapter 31 (relating to retail excise taxes), or chapter 32 (manufacturers taxes) shall be allowed or made unless the person who paid the tax establishes, under regulations prescribed by the Secretary, that he –

(A) has not included the tax in the price of the article with respect to which it was imposed and has not collected the amount of the tax from the person who purchased such article . . . .

By its plain terms, § 6416 requires Perfect Form to "demonstrate that it did not pass on the tax to its consumers." *Tenneco, Inc. v. United States*, 17 Cl. Ct. 345, 349 (1989). "Unlike many IRC provisions, § 6416 does not protect the public fisc, but the fairness of the refund process." *Id.* In other words, § 6416 ensures that the entity that bore the financial burden of the tax enjoys the benefit of the refund. *Id.*; *see also Worthington Pump & Mach. Corp. v. United States*, 129 Ct. Cl. 87, 92 (1954) ("Congress intended that only those persons who actually had to bear the tax should benefit by any refund the Treasury might make."). In short, satisfying § 6416(a) qualifies a taxpayer to receive a refund for an overpayment of an excise tax. *See* 26 U.S.C. § 6416(a) ("Condition to allowance"); *see also Andrew Jergens Co. v. Connor*, 125 F.2d 686, 689 (6th Cir. 1942) ("[T]he burden of proof was on [taxpayers] to show that they were entitled to recover the taxes claimed to have been overpaid . . . ."); *Rothman v. Dist. Dir. of IRS*, 483 F.2d 1079, 1080-81 (9th Cir. 1973) ("In order for the taxpayer to qualify for a refund of an illegally collected excise tax, he must provide the government with written authority from the person or consumer who actually paid the tax.").

There are two sets of tax payments here and the analyses for each of them is somewhat different. First, there is the $14,622.05 that Perfect Form paid in excise taxes for Q3-2011. The Government did not assess any additional taxes due for this quarter and Perfect Form argues that the entire $14,622.05 was an overpayment because it argues Grace was responsible for the tax. Second, for the remaining quarters, Perfect Form paid the excise tax on one transaction to bring its challenges to the Government's assessments of additional taxes. For these quarters, Perfect Form only seeks a refund of these single transaction payments and an abatement of the Government's assessments of additional taxes.[5] Perfect Form does not seek a refund of any of the excise taxes it paid contemporaneously for these remaining quarters. The Court addresses these arguments in turn.

> a)   Q3-2011

For Q3-2011, Perfect Form argues that the entire amount it paid in taxes constituted an overpayment because, according to Perfect Form, Grace paid the excise tax on the materials that Perfect Form purchased from it in Q3-2011. To recover any refund for Q3-2011, Perfect Form must show that it did not pass the excise tax along to its customers. *Tenneco*, 17 Cl. Ct. at 349 ("[T]he IRC requires plaintiff to demonstrate that it did not pass on the tax to its customers."); *Locus Telecomms., Inc. v. United States*, 99 Fed. Cl. 641, 645-55 (2011) ("Plaintiff had the initial burden of proving that it did not charge its distributors for the tax, or otherwise pass along its costs."). Whether a taxpayer passed the excise tax on to the consumer is generally a factual determination that is proven by a preponderance of the evidence. *Tenneco*, 17 Cl. Ct. at 350;

---

[5] Although Perfect Form seeks recovery of the $162.86 it paid to seek abatement of the Q4-2011 assessment, the Court dismissed this claim as untimely. *Supra* at II.A.1. Therefore, the Court analyzes only the additional payments related to 2012.

*Browning Arms Co. v. United States*, 56 Fed. Cl. 123, 134 (2003) (citing *A.S. Epstein v. United States*, 174 Ct. Cl. 1158, 1174 (1966)); *see also Locus Telecomms.*, 99 Fed. Cl. at 645-55.

In showing that it did not pass on the excise tax to a consumer, Perfect Form may produce evidence of correlation between the taxpayer's price changes and the application of excise tax; refunding excise taxes to exempt customers; references of excise tax in sales literature and invoices; contract clauses that indicate the excise tax is included where applicable; comparing the price charged to exempt foreign transactions and taxable domestic transactions; taxpayer profitability; and methods of accounting for the tax. *Tenneco*, 17 Cl. Ct. at 350.

Here, Perfect Form simply asserts that for Q3-2011, it paid the excise tax that it claims should have been paid by Grace. ECF No. 63 at 19. And, Perfect Form argues, the result is that the "tax was paid twice during this period." *Id.* According to Perfect Form, "[w]here a party seeks a refund of overpaid taxes which are not ultimately passed on to the consumer, § 6416(a) does not bar recovery through a refund." *Id.* (citing *F&D Trading Corp. v. United States*, 217 Ct. Cl. 472, 481-82 (1972)).

The problem for Perfect Form is that nothing about its argument indicates that it did not pass along the tax to its consumers. In fact, Perfect Form has failed to put forth *any* evidence that it did not pass the tax on to its consumers. And the failure to come forward with evidence creating a material disputed fact means that summary judgment for Perfect Form's favor is not appropriate. *Cheshire Hunt, Inc. v. United States*, 158 Fed. Cl. 101, 111 (2022) ("Because there is no evidence . . . summary judgment is not appropriate here.").

The only evidence that could show Perfect Form complied with § 6416(a) is a single interrogatory response. ECF No. 62 at 21. The Government's interrogatory reads: "Do you contend that you did not include FET in the price of the bows that you sold to Elite during the tax periods at issue?" ECF No. 57-2 at B301. In response, Perfect Form answered "No." *Id.* at B301. In its amended responses to the Government's interrogatories, Perfect Form changed its answer to "Yes", *i.e.*, that it omitted the FET from the price of the bows it sold to Elite. *Id.* at B311. Yet, this is wholly insufficient to create a genuine dispute. *See Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 164 (Fed. Cir. 1985) ("[M]ere allegations by declaration or otherwise do not raise issues of fact needed to defeat a motion for summary judgment."); *see also Esposito v. United States*, 70 Fed. Cl. 558, 563 (2006) ("Merely alleging a dispute over a material fact is not enough [to survive summary judgment].").

While Perfect Form's failure to show that it did not pass along the excise tax to its consumer is itself fatal to its Q3-2011 claim, it gets worse. During his deposition, Peter Crawford admitted that Perfect Form *included* the excise tax in the price of the bows it sold to Elite:

> Q: Was federal excise tax also included in the price of bows that
> Perfect Form sold to Elite?
>
> A: Yes. And we had to do that calculation.
>
> * * *

> Q: And for all four of those model bows, was federal excise tax included in the price of bows that Perfect Form sold to Elite?
>
> A: Yes.

ECF No. 54-1 at A0029, 88:21-24; *see also id.* at A0033-34, 100:4-101:15 (Peter Crawford admitting that bows sold to Elite from Perfect Form during Q2-2012 had the excise tax included in the price); ECF No. 57-2 at B379, 92:8-11 (Peter Crawford admitting that bows Perfect Form sold to an unrelated third-party included the excise tax).

Further evidence that Perfect Form included the excise tax in the sales to Elite is the "backing out" of the excise tax on international sales. In a summary of Perfect Form's sales during Q4-2011, "remove overseas sales" can be seen written in the margin alongside "back-of-the-envelope" excise tax calculations. *Id.* at B456; B047 (describing Perfect Form's books and records as "back-of-the-envelope"). This is hornbook evidence that Perfect Form included the tax in the price of the bows it sold Elite. *Tenneco*, 17 Cl. Ct. at 350. Backing out the excise tax from overseas sales was a practice employed by Elite as well. ECF No. 57-2 at B347 (invoice from Elite to a buyer in Canada states "FET tax will be deducted once proof of delivery is obtained by Elite Archery."); *see also Id.* at B379, 92:15-18 (Q: "And do you recall how the pricing was determined for international customers?" A: "The way we did it was we backed out the FET tax 'cause it didn't apply to international sales."). Of course, the only way that Elite would have paid the excise tax is if its related entity—Perfect Form—passed it along to Elite (a fact Elite would be fully aware of). And Elite's passing it along to its customers shows that Elite and Perfect Form understood that they were not bearing the economic burden of the excise tax.

The only evidence before the Court shows that Perfect Form passed on the economic burden of the Q3-2011 excise tax to the ultimate consumer. Because 26 U.S.C. § 6416(a)(1) precludes any refund claim when the taxpayer passes along the burden of the tax to its customers, Perfect Form cannot recover the refunds that it seeks.

### b)   The 2012 tax quarters

The question is somewhat different for the 2012 quarters because there the only "overpayments" for which Perfect Form seeks a refund are the $497 that it paid to cover a single transaction in each quarter so that it could challenge the Government's assessments of additional tax liabilities. Perfect Form paid $166 for Q1-2012, $166 for Q2-2012, and $165 for Q3-2012.

The Government contends that § 6416(a)(1)(A) also prevents Perfect Form from recovering these amounts because Perfect Form passed on the excise tax to its consumers. ECF No. 62 at 19-20. Here, Perfect Form contends that § 6416(a)(1)(A) does not prevent it from recovering these amounts because the "end consumer will be unaffected since the refunds at issue for Q4-2011 through Q3-2012 involve erroneous assessments paid *years after* the original sales and not passed on to Perfect Form's customers." ECF No. 63 at 19 (emphasis in original). In other words, while Perfect Form passed along the amount of excise tax it calculated at the time of sale, the refunds it seeks for the 2012 additional tax assessments were not passed on to the consumers.

Neither Party pointed the Court to a case involving a similar situation, nor has the Court found one.  But because the Court will need to reach the merits of the Government's counterclaims for these quarters in any event, it need not resolve this thorny issue now.

2.    Perfect Form's claim for refund for Q3-2011.

Even if § 6416(a) did not bar Perfect Form's Q3-2011 refund claim, the Court would still grant summary judgment for the Government.  Perfect Form paid $14,622.05 in federal excise taxes for Q3-2011.  ECF No. 54-1 at A0676-77.  Perfect Form subsequently filed for a full refund of these excise taxes, claiming it "purchased *completed* archery items 'tax paid' from a [sic] unrelated manufacturer.  FET [federal excise tax] was erroneously paid on the same articles for tax period ending 9/30/2011 thus double paying the excise tax." *Id.* at A0679 (emphasis added); *see also* ECF No. 63 at 23 (confirming that this "unrelated manufacturer" was Grace).  In response to the IRS's request for documentation for the Q3-2011 refund, Perfect Form's representative stated it purchased "*bows, bow parts and accessories . . . from* Grace, Elite and 41 other unrelated manufacturers. . . . [Perfect Form's] purchases *from* Elite are detailed in a spreadsheet attached.  Elite bought bows, bow parts and accessories tax paid from Grace in previous months." ECF No. 57-2 at B211-12 (emphases added).

In its Complaint, Perfect Form alleged it purchased articles from Grace, not Elite.  ECF No. 62 at 30; ECF No. 1 ¶ 23 ("During the period[] ending September 30, 2011 . . . Plaintiff sold bows to Elite and paid the Archery Tax on those sales."), ¶ 17 ("Plaintiff was formed in May, 2011 to transition from purchasing *completed* bows from Grace to manufacturing its own bows.") (emphasis added).  Then during discovery, Perfect Form claimed it "used some of the archery equipment to further manufacture bows and archery equipment."  ECF No. 57-2 at B311.  Here, Perfect Form again claims it "used some of the archery equipment to further manufacture bows and archery equipment."  ECF No. 54 at 10.  In its reply in support of its summary judgment motion, Perfect Form states it is "entitled to a refund of manufacturer's taxes paid for the period *in which it was not manufacturing bows*" but later claims, "Perfect Form then *used this archery equipment in the further manufacture* of taxable bows."  ECF No. 63 at 20, 23 (emphasis added).

Finally, Perfect Form appended to its reply in support of its motion for summary judgment invoices detailing the specific products that Perfect Form purchased from Grace during Q3-2011.  ECF No. 63-1 at A0758-94.  These invoices appear to be for parts and accessories, and do not reflect that Perfect Form purchased *completed* taxable articles from Grace during Q3-2011.  *See id.*

As a manufacturer, there are certain circumstances where Perfect Form would not be required to pay the excise tax.  Specifically, 26 U.S.C. § 6416(b)(3) provides:

> If the tax imposed by chapter 32 has been paid with respect to the sale of any article . . . by the manufacturer . . . and such article is sold to a subsequent manufacturer or producer before being used, such tax shall be deemed to be an overpayment by such subsequent manufacturer or producer if –

14

> (A) . . . such article is used by the subsequent manufacturer or
> producer as material in the manufacture or production of, or as
> a component part of –
>
> (i) another article taxable under chapter 32.

There are, essentially, three requirements that Perfect Form must establish to show it was not required to pay the excise tax: (1) the manufacturer paid the tax for the taxable article; (2) the manufacturer sold the taxable article to a subsequent manufacturer; and (3) the subsequent manufacturer used that taxable article "in the manufacture or production of, or as a component part of" another taxable article.  If these requirements are met, the tax paid is deemed an "overpayment by such subsequent manufacturer."  *Id.*

> a)      *Whether Grace paid the manufacturer's excise tax.*

Grace sold Perfect Form taxable articles (*i.e.*, bows or bow accessories) during Q3-2011.  Grace was the manufacturer of these taxable articles and, as the manufacturer, was responsible for paying the manufacturer's excise tax imposed under 26 U.S.C. § 4161(b)(1).  Perfect Form contends that it "did not purchase this equipment tax-free" and argues that the tax was presumed to be included in the sales price of the bows from Grace to Perfect Form.  ECF No. 54 at 30-32.

Treasury regulations permit a presumption that the tax is included in the sale price when the excise tax is not separately charged.  26 C.F.R. § 48.4216(a)-2(a)(1) states that when a manufacturer computes a Chapter 32 excise tax on a taxable article, separate and apart from the price of the article, the tax is not included in the taxable sale price.  It further states that where "no separate charge is made as tax, it will be *presumed* that the price charged to the purchaser for the article includes the proper tax . . . ."  *Id.* (emphasis added).  Treasury's example on this is helpful:

> If an article subject to tax at the rate of 10 percent is sold for $100
> and an additional item of $10 is billed as tax, $100 is the taxable
> selling price and $10 is the amount of tax due thereon. However, if
> the article is sold for $100 with no separate billing or indication of
> the amount of the tax, *it will be presumed that the tax is included
> in the $100*, and a computation will be necessary to determine what
> portion of the total amount represents the sale price of the article
> and what portion represents the tax. The computation is as follows:
>
> Taxable sale price=sale price including tax/100+rate of tax.
>
> Thus, if the tax rate is 10 percent and the sale price including tax is
> $100, the taxable sale price is $90.91 (that is, $100 divided by
> (100+10)), and the tax is 10 percent of $90.91, or $9.09.

*Id*. § 48.4216(a)-2(a)(2) (emphasis added).

Relying on this presumption, Perfect Form argues that "[w]hen Grace did not separately state the Archery Tax on the invoice to the Taxpayer, it was presumed that the Archery Tax was

built into the price charged to the Taxpayer." ECF No. 54 at 30.[6] Perfect Form also contends that "[t]he fact that Grace may not have *paid* the Archery Tax does not relieve Grace from the obligation to report and pay the Archery Tax, nor does it impose the duty to pay the tax on Perfect Form." *Id.* at 30 (emphasis in original).

But, as the Government responds, whether Grace *should have paid the tax* is not the same as whether Grace *did pay the tax*. *See* ECF No. 62 at 28. According to the Government, "[t]he plain language of the statute does not provide that tax is deemed to be an overpayment where it *should have been* paid by another party." *Id.* Indeed, 26 U.S.C. § 6416(b)(3) provides that an excise tax payment will be considered an overpayment "[i]f the tax imposed by chapter 32 *has been paid* with respect to the sale of any article . . . by the manufacturer . . . ." (emphasis added). The first question is whether Grace paid the tax, not whether Grace should have paid the tax.

Perfect Form stretches the presumption in the regulation far beyond its limits. Treasury Regulation § 48.4216(a)-2 permits a taxpayer to presume that the tax is included in the sales price when no separate charge for the tax is listed. And, as Perfect Form argues, the invoices from Grace to Perfect Form do not list a separate charge for the excise tax. ECF No. 63-1 at A0758-94. Thus, Perfect Form could presume the excise tax was included in the price of the articles purchased from Grace. But the presumption does not allow this Court to presume that Grace paid the excise taxes on the taxable articles it sold to Perfect Form.

Put simply, Perfect Form is unaware if Grace paid the tax on these articles. In his deposition, Nick Tranto, a consultant to The Outdoor Group, testified "[Grace was] the manufacturer. This is a manufacturer's tax. [Grace] should have paid it, and I'm sure they did. *I don't know. I didn't look at their 637*. But they were liable to the tax, not [Perfect Form]." ECF No. 54-1 at A0668 (emphasis added); *see also* ECF No. 63 at 22 ("[Perfect Form] had no way of knowing whether Grace was paying the manufacturer's tax . . . .").

But Grace does know what taxes it included in its invoices to Perfect Form and, more importantly, the taxes it paid the Government. And Grace stated unequivocally that it *did not* pay the excise tax on the articles sold to Perfect Form. During the administrative proceedings, Grace told the IRS it "did not assess or collect FET from the Taxpayer PFM [Perfect Form]." ECF 54-1 at A0682. More importantly, Grace also stated that "it did not remit any FET [federal excise tax] to the IRS based on the sales to [Perfect Form] during the 201109 tax period." *Id.* The undisputed evidence shows that Grace did not pay the excise tax on the taxable articles that it sold to Perfect Form in Q3-2011. Perfect Form's speculation that Grace paid the tax is insufficient to create a disputed fact sufficient to overcome summary judgment. *Lathan Co., Inc. v. United States*, 20 Ct. Cl. 122, 125 (1990) ("[B]ald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion." (quoting *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831 (Fed. Cir. 1984)).

---

[6] In support of this, Perfect Form cites to invoices in the record at ECF No. 54-1 at A0041-315. But these are invoices from Grace to Elite. Perfect Form eventually produced evidence of sales during Q3-2011 from Grace to Perfect Form. *See* ECF No. 63-1 at A0758-94.

> b)     *Perfect Form cannot show it used the taxable articles it purchased from Grace in Q3-2011 to further manufacture another taxable article.*

Even if Grace had paid the tax, there is no evidence in the record to show that Perfect Form used the articles it purchased from Grace to further manufacture taxable articles. Perfect Form argues at length that it used the articles it purchased from Grace during Q3-2011 in the further manufacture of completed bows, exempting it from taxation under 26 U.S.C. § 6416(b)(4).

Depending on which Perfect Form document or testimony the Court reviews, all that one can discern is that if Perfect Form was further manufacturing bows at all, it either used all the items purchased from Grace in the further manufacture of bows or used some undefined subset of the items purchased from Grace and 41 other suppliers in the further manufacture of bows. Perfect Form's consultant, Nick Tranto, testified in his deposition that Perfect Form was "not further manufacturing" bows during Q3-2011. ECF No. 54-1 at A0664, 55:18-22. And when Perfect Form first submitted its refund claim to the IRS for Q3-2011, it stated it purchased "completed archery items" from Grace. *Id.* at A0679. But when the IRS requested information to support this, Perfect Form changed its story, saying "[i]n the 3rd quarter of 2011, all bows, bow parts and accessories were purchased from Grace, Elite and 41 other unrelated manufacturers. PFM purchases were over $624,000 for that period." ECF No. 57-2 at B211.

Perfect Form contends that it "continued to purchase various taxable archery equipment parts and accessories, including bow strings, bow limbs, bow cable guards and cable guard slides, from Grace" and cites invoices to establish these purchases. ECF No. 54 at 10 (citing ECF No. 54-1 at A0041-0315). But these invoices reflect sales from Grace to Elite, not from Grace to Perfect Form.[7] And Perfect Form twice states it used the articles purchased from Grace "to further manufacture completed bows." *Id.* at 32. Yet, in both instances, Perfect Form fails to cite to anything in the record in support of this proposition. In its reply, Perfect Form states, again without any citation to the record, that "Perfect Form then used this archery equipment in further manufacture of taxable bows." ECF No. 63 at 23.

And Perfect Form responded to an interrogatory that it "used *some* of the archery equipment [purchased from Grace] to *further manufacture* bows and archery equipment." ECF No. 57-2 at B301 (emphasis added). Perfect Form contradicts itself in its reply in support of summary judgment too. It argues that it is entitled to a refund "for the period in which it was not manufacturing bows." ECF No. 63 at 20. Then, three pages later, Perfect Form states they "used this archery equipment in further manufacture of taxable bows." *Id.* at 23. Regardless, if Perfect Form used *some* of the equipment to further manufacture bows, it necessarily did not use the rest of the equipment to further manufacture bows. And for this equipment that Perfect Form did not use, it would not be entitled to a refund because it did not use the equipment in the further manufacture of bows.

Perfect Form admits during discovery it "sold $132,940.16 worth of product to Elite Archery during July, August, and September of 2011 . . . [that was] originally purchased from

---

[7] Perfect Form similarly relied on invoices from Grace to Elite when arguing that Grace did not separately identify the excise tax on invoices to Perfect Form. ECF No. 54 at 30.

Grace Engineering." ECF No. 57-2 at B353. But when asked to identify "by at least description, item number, and serial number" the products that Perfect Form purchased from Grace, Perfect Form responded that it would "produce its purchase orders and invoices from Grace Engineering for the applicable tax period." *Id.* at B353. Keeping track of the serial numbers for each taxable article does not appear to be a foreign concept, as Peter Crawford, former President of Elite, testified: "Almost every product I've ever worked with is serialized so you can keep track of it." ECF No. 54-1 at A0021, 75:6-7. Indeed, Elite "would keep track of every single serial number and where it went." ECF No. 54-1 at A0021, 75:20-21.

Eventually, Perfect Form produced these purchase orders and invoices. And it is true that the specific items that Perfect Form purchased from Grace during Q3-2011 are reflected in the invoices. *See* ECF No. 63-1 at A0758-94. Yet this only shows that Perfect Form purchased bow parts and accessories from Grace; it does not support an inference that Perfect Form used these items "as material in the manufacture or production of, or as a component part of . . . another article taxable under Chapter 32." 26 U.S.C. § 6416(b)(3)(A)(i). Thus, Perfect Form has not presented evidence that it used the products it purchased from Grace to "further manufacture" another taxable article.

To say that Perfect Form's recordkeeping leaves something to be desired is an understatement, at least for Q3-2011. The Government contends that this lack of recordkeeping is "grounds for this Court to draw an adverse inference against the plaintiff for failure to produce documents that should normally be in the sole control of the plaintiff." ECF No. 62 at 36. Perfect Form does not believe a negative inference is appropriate because there is no evidence that it destroyed documentation and that "Perfect Form should not be punished for any informality in its record keeping process . . . ." ECF No. 63 at 9. The Court finds it inappropriate to draw an adverse inference for the "destruction" of Perfect Form's records because it is not clear these records ever existed in the first place. And Perfect Form will not be "punished" for informal recordkeeping. But Perfect Form's inadequate recordkeeping will not be rewarded with a refund or abatement of taxes. The Tax Code requires Perfect Form (and all other taxpayers) to maintain records "to show whether or not such person is liable for tax," and Treasury Regulations require a taxpayer seeking a refund to provide "appropriate supporting evidence." 26 U.S.C. § 6001; 26 C.F.R. § 301.6402-2(a)(2); *Larson v. United States*, 89 Fed. Cl. 363, 407 (2009) ("The regulations at 26 C.F.R. § 301.6402–2(a) require that the taxpayer seeking a refund provide materials to substantiate their claim."). Perfect Form's failure to maintain appropriate records may not support an adverse inference, but it does undermine its ability to establish its claim with proper documentation as required under the Code.

<em>c)      Perfect Form is not entitled to a refund for Q3-2011.</em>

Perfect Form has not shown that the $14,622.05 it remitted to the IRS for Q3-2011 was an overpayment of taxes. Perfect Form has failed to show that Grace paid the federal excise tax for the items sold to Perfect Form during Q3-2011. And Perfect Form failed to show that these items were used to further manufacture taxable articles. Because Perfect Form does not satisfy § 6416(b)(3)(A), the Court denies Perfect Form's claim for a refund of $14,622.05 for Q3-2011. *E.g.*, *Thomas v. United States*, 56 Fed. Cl. 112, 121 (2003) (finding a failure to provide documentation of entitlement to a refund entitled the Government to summary judgment).

### C.       The 2012 Claims and the Government's Counterclaims.

In a refund suit, the IRS's assessment is presumed to be correct, placing the burden on the taxpayer to put forward evidence to rebut the correctness of the IRS's assessment.  *United States v. Janis*, 428 U.S. 433, 440-41 (1976); *Cook v. United States*, 46 Fed. Cl. 110, 114 (2000).  Here, the IRS issued Certificates of Assessment for each of the quarters at issue.  *See* ECF No. 54-1 at A0599-621.  And "where the Government presents a Certificate of Assessment for a tax period, the taxpayer will bear the burden of proving he is not liable for the assessment."  *Kobus v. United States*, 103 Fed. Cl. 575, 586 (2012).  To rebut the presumption, the "taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination."  *Bubble Room*, 159 F.3d at 561.

In addition to rebutting the presumption, the taxpayer must also prove "'entitlement to the specific refund amount claimed.'"  *Albemarle Corp. & Subsidiaries v. United States*, 118 Fed. Cl. 549, 561 (2014) (quoting *Bubble Room*, 159 F.3d at 561), *aff'd*, 797 F.3d 1011 (Fed. Cir. 2015); *see also Janis*, 428 U.S. at 440-41 ("In a refund suit the taxpayer bears the burden of proving the amount he is entitled to recover.").  If the taxpayer fails in carrying its burden, "'the Commissioner's determination of the amount of tax liability is regarded as correct.'"  *WMI Holdings Corp.*, 891 F.3d at 1022 (quoting *Washington Mutual, Inc. v. United States*, 856 F.3d 711, 721 (9th Cir. 2017)).

Because this case involves a divisible tax, Perfect Form is seeking both a refund of amounts already paid to cover single transactions in each quarter and for an abatement of the IRS's assessment of additional taxes.  The outcome of one will be dispositive of the other.  *Diversified Grp.*, 123 Fed. Cl. at 451.  This is because the divisibility rule "is designed as a means of '*settling the question* of the right of the government to have made [the entire tax] assessment against [the taxpayer].'"  *Cencast Serv., L.P. v. United States*, 729 F.3d 1352, 1366 (Fed. Cir. 2013) (emphases and alterations in original) (citations omitted).  This means "'the taxpayer may pay the full amount on one transaction, sue for a refund for that transaction, and have the outcome of this suit determine his liability for all the other, similar transactions.'"  *Diversified Grp.*, 123 Fed. Cl. at 451 (quoting *Korobkin v. United States*, 988 F.2d 975, 976 (9th Cir. 1993) (per curiam)).

1.       The manufacturer's excise tax base.

The Internal Revenue Code imposes an 11% excise tax on "the sale by the manufacturer" for bows with a draw weight of more than 30 pounds.  26 U.S.C. § 4161(b)(1)(A).  Like other excise taxes, the price to which this excise tax applies must include "any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment . . . ."  26 U.S.C. § 4216(a).  This method of calculating the price dates to at least the Revenue Act of 1932, which included § 4216(a)'s predecessor statute, § 619(a).  The Revenue Act of 1932, Pub. L. No. 72-154, § 619, 47 Stat. 169, 267 (1932).  Section 619(a) also required that when calculating the tax base on which to impose the excise tax liability, one must include "any charge for coverings and containers of whatever nature, and any charge incident to placing the article in condition packed ready for shipment."

The Supreme Court examined this language in *F.W. Fitch Co. v. United States*, 323 U.S. 582 (1945), and concluded that "[a]dvertising and selling expenses incurred by a manufacturer such as petitioner clearly fall within the class of charges which Congress intended to be included in the tax base." *Id.* at 584-85. Thus, § 4216(a), which is materially indistinguishable from the statute analyzed in *Fitch*, requires a manufacturer to account for advertising and selling costs when calculating the price on which to impose the excise tax. *Id.* at 584-85; *see also Shakespeare Co. v. United States*, 189 Ct. Cl. 411, 415 (1969) ("In view of *Fitch Co. v. United States*, *supra* which holds that advertising and selling costs must be included in the price base . . . .").

Related companies are not permitted to depress the tax base by shifting the advertising costs to a related entity. *E.g.*, *Bourjois, Inc. v. McGowan*, 85 F.2d 510, 511 (2d Cir. 1936). In *Bourjois*, a case arising under Section 619(a), a manufacturer sold its products, which were subject to an excise tax, on the open market to unrelated customers and bore the cost of advertising these products. *Id.* The manufacturer thus paid the excise tax on the sale price that included the advertising costs. But when the manufacturer began selling products to related companies, the related companies paid the manufacturer's "selling costs." *Id.* Thus, the price that the manufacturer charged the related companies did not include selling costs and it was this price, exclusive of selling costs, that the manufacturer calculated its excise tax liability upon. The Second Circuit held that the correct price to calculate the manufacturer's tax liability should have been the prices the manufacturer charged unrelated purchasers. *Id.* at 512. That is, the "selling costs" that were absorbed by the related entity should have been accounted for by the manufacturer in calculating its excise tax liability. *Id.* This is precisely the Government's argument here.

And the Court finds *Bourjois* persuasive. There is good reason to include advertising and selling costs in the excise tax base, especially for manufacturers selling to related distributors. Manufacturers that sell to related distributors need not bother with competing in the marketplace because they often have only one customer—the related distributor—that buys most, if not all, of the manufacturer's products. As a result, these manufacturers are not burdened with the costs of merchandising, advertising, or selling because their position is secure in that their one customer, the related distributor, will continue to purchase their products without the need for advertising or selling costs. And without these additional costs, the manufacturer does not account for them when pricing its products. This depresses the cost of the product, which necessarily depresses the excise tax base. The same is not true of manufacturers who do not sell to related distributors. These independent manufacturers sell to as many buyers as possible, but to do so they must expend additional costs to advertise and sell their products. And the independent manufacturer must account for these costs when pricing his products. Accounting for these costs drives up the cost of his product, which also increases the excise tax base. *See Crème Mfg. Co., Inc. v. United States*, 492 F.2d 515, 519-520 (5th Cir. 1974) (discussing the difference in costs between "private brand manufacturers" and "full service manufacturers" and how it relates to calculating tax liability).

The statute is clear that any charges "incident to placing the article in condition packed ready for shipment," unless specifically excluded by the statute, must be accounted for when calculating a manufacturer's excise tax base. 26 U.S.C. § 4216(a). *Fitch* clarified that this language encompasses advertising and selling costs. And *Bourjois* confirms that even if a

related entity bears these costs for the manufacturer, the manufacturer must still account for them when calculating its excise tax base.

2.     <u>Perfect Form did not include its advertising and selling costs in its excise tax base.</u>

The Government argues that the prices at which Perfect Form sold the bows to Elite cannot be correct as a "matter of law" because these prices did not include advertising and selling costs. ECF No. 70 at 41:7-15; *see also* ECF No. 62 at 34-35. Perfect Form did not address this argument in its briefs, nor did Perfect Form offer any evidence that the price of the bows it sold to Elite included these advertising and selling costs. ECF No. 67 at 14; ECF No. 70 at 66:7-17. Elite's President, Peter Crawford, admitted that Elite bore the advertising, marketing, and shipping costs for the products Perfect Form sold Elite. ECF No. 57-2 at B377 at 90:1-10; *see also id.* at B334-35 (showing the advertising and shipping costs of Elite for all five tax quarters); B059-64 (showing almost no advertising and shipping costs of Perfect Form for all five tax quarters). Thus, the price of the bows that Perfect Form sold Elite did not include the advertising or selling costs. Because this is undisputed, the price of the bows that Perfect Form sold Elite cannot be the correct price on which to calculate the 11% excise tax. Perfect Form's failure to include certain advertising and selling costs in its excise tax calculations, as required by § 4216(a) and Supreme Court precedent, means that Perfect Form's calculation of its excise tax liability for Q1-2012, Q2-2012, and Q3-2012,[8] is incorrect as a matter of law. Because Perfect Form bears the burden of showing that the amount it is entitled to as a refund is correct, its failure to include advertising and selling costs in its tax base is fatal to its claim. The Government is, therefore, entitled to summary judgment.

3.     <u>Substantial variance precludes the application of § 4216(b)(4).</u>

Perfect Form makes much of the accuracy of its calculated fair market value of the bows it sold to Elite because it argues that 26 U.S.C. § 4216 does not allow constructive pricing unless the bows it sold Elite were below fair market value. Before this Court, Perfect Form argues that this fair market value is correct under 26 U.S.C. § 4216(b)(4), which applies when the related distributor regularly sells only to retailers. But before the IRS, Elite asserted that it regularly sold to wholesalers, retailers, and end users.

The Government argues that the Court may not consider the § 4216(b)(4) argument because Perfect Form took a contrary position in its claim before the IRS. ECF No. 67 at 9-10; *see also* ECF No. 57-2 at B193-94; ECF No. 70 at 41:16-42:1. Raising an issue not included in a timely claim for refund violates the substantial variance rule, which bars a taxpayer from presenting claims in a tax refund action that substantially vary from the legal theories and facts set forth in the tax claim it submitted to the IRS. *Sierra Pac. Res. & Subsidiaries v. United States*, 56 Fed. Cl. 366, 372 (2002). This rule ensures the IRS has (1) "notice as to the nature of the claim and the specific facts upon which it is predicated," (2) "an opportunity to correct errors," and (3) "limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend." *Id.* (quoting *Lockheed Martin Corp. v. United*

---

[8] If the Court had jurisdiction over Q4-2011, this same conclusion would apply to that quarter as well.

*States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000)); *see also Computervision Corp. v. United States*, 445 F.3d 1355, 1362-64 (Fed. Cir. 2006) (describing the substantial variance rule and its exceptions).

Perfect Form raises 26 U.S.C. § 4216(b)(4) for the first time in its reply in support of summary judgment. *See* ECF No. 63 at 2, 8; ECF No. 70 at 41:16-42:1. The Government argues that the Court should not consider Perfect Form's arguments concerning 26 U.S.C. § 4216(b)(4) because Perfect Form did not raise these arguments in any of its claims submitted to the IRS. ECF No. 67 at 9-10; ECF No. 70 at 41:16-42:1. Section 4216(b)(4) would provide for a different constructive price calculation if Elite "regularly sells (except for tax-free sales) such [bows] only to retailers." 26 U.S.C. § 4216(b)(4)(B). Before the IRS, however, Perfect Form asserted that Elite sold its bows "to retail dealers, wholesalers (who then resell to retailers), and end users." ECF No. 57-2 at B193-94. The Court will not consider Perfect Form's arguments under 26 U.S.C. § 4216(b)(4) because Perfect Form failed to raise them when it submitted its claims to the IRS.

4.   Perfect Form is liable for the § 6651(a)(2) penalty.

The Government assessed a "failure to pay" penalty under 26 U.S.C. § 6651(a)(2) for Q4-2011 in the amount of $2,305.43. ECF No. 57-2 at B247. This penalty is imposed when the taxpayer fails to pay the amount shown on any return under Chapters 51, 52, 53, or 61 (except part III thereof), unless the taxpayer shows the failure to pay "is due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(2). The Government included these penalties in its answer and counterclaim, ECF No. 9 ¶ 39, and Perfect Form denied the penalty was properly assessed, ECF No. 10 ¶ 39. Yet Perfect Form failed to address its liability for the § 6651 penalty when it moved for summary judgment, a fact that the Government noted when it filed its cross-motion. ECF No. 62 at 45. Because Perfect Form failed to argue that its failure to pay was "due to reasonable cause and not due to willful neglect" the Government argues the Court should enter summary judgment in its favor for the § 6651 penalty if it enters summary judgment in the Government's favor on its counterclaims. *Id.* at 45. In its reply, Perfect Form claims it "has surely demonstrated that any failure to pay is not due to willful neglect" but rather because it has always contended "the IRS's determination was simply improper, and [Perfect Form] has not refused to pay simply because of intentional indifference to any amount owed." ECF No. 63 at 25.

A taxpayer seeking to avoid paying the penalty under 26 U.S.C. § 6651 "must demonstrate both the absence of willful neglect and a reasonable cause for its failure to pay the tax timely." *Gonzales v. United States*, 115 Fed. Cl. 779, 790 (2014). The burden is on the taxpayer to show the penalty does not apply. *Conway v. United States*, 326 F.3d 1268, 1278 (Fed. Cir. 2003). Willful neglect is a "conscious, intentional failure" to comply with IRS tax provisions, or a "reckless indifference" to those provisions. *Gonzales*, 115 Fed. Cl. at 790. Treasury regulations provide that a taxpayer's delay is attributable to reasonable cause "[i]f the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time." Treas. Reg. § 301.6651-1(c)(1).

Perfect Form contends it is not liable for the penalty because it "has contended from the beginning that the IRS's determination was simply improper, and has not refused to pay simply

because of intentional indifference to any amount owed." ECF No. 63 at 25.  Perfect Form did not plead any fact in its Complaint or Answer to the Government's counterclaims that show its failure to pay was not due to willful neglect or that there was reasonable cause not to pay.  Nor does Perfect Form point to any evidence that shows its failure to pay due to willful neglect or that there was reasonable cause not to pay.  The burden to produce evidence as to both is on Perfect Form as the taxpayer.  *Gonzales*, 115 Fed. Cl. at 790.  Perfect Form's failure to carry its burden allows only one outcome—the Government is entitled to summary judgment on the § 6651(a)(2) penalty imposed on Q4-2011.

## IV.    Conclusion

For the foregoing reasons, the Court denies Perfect Form's motion for summary judgment and grants the Government's cross motion for summary judgment.  The Clerk is directed to enter judgment as follows:

- For the period ending September 30, 2011 (Q3-2011), judgment for the Government.

- For the period ending December 31, 2011 (Q4-2011), judgment dismissing the Plaintiff's claim for lack of jurisdiction and judgment for the Government on its counterclaim in the amount of $51,268 for the additional tax assessed, $2,305.43 for the penalty under 26 U.S.C. § 6651(a)(2), less payments made, plus interest assessed and accruing under law.

- For the period ending March 31, 2012 (Q1-2012), judgment for the Government on Plaintiff's claim and judgment for the Government on its counterclaim in the amount of $48,405.12, less payments made, plus interest assessed and accruing under law.

- For the period ending June 30, 2012 (Q2-2012), judgment for the Government on Plaintiff's claim and judgment for the Government on its counterclaim in the amount of $48,143.56, less payments made, plus interest assessed and accruing under law.

- For the period ending September 30, 2012 (Q3-2012), judgment for the Government on Plaintiff's claim and judgment for the Government on its counterclaim in the amount of $35,404.85, less payments made, plus interest assessed and accruing under law.

IT IS SO ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge